RHODES v. NEW ORLEANS GREAT NORTHERN R. CO.

[91 South. 281. No. 22333.]

1. MASTER AND SERVANT. *Finding of federal Railroad Labor Board
   fixing wages properly pleaded.*

   The provisions of section 770, Code 1906 (section 553, Heming-
   way's Code), providing that, in pleading and judgment, or other
   determination of a court or officer of special jurisdiction, it shall
   not be necessary to state the facts conferring jurisdiction, but

such judgment or determination may be stated to have been duly given, and the facts conferring jurisdiction may be shown at the trial, applies to a finding of the Railroad Labor Board created by the Act of Congress of February 28, 1920, commonly known as the Transportation Act of 1920. The declaration in this case had to comply with this section of the Mississippi Code.

2. ACCORD AND SATISFACTION. *Estoppel. Acceptance of part of wages fixed by Labor Board does not waive balance, or work estoppel; waiver and estoppel must be pleaded.*

The acceptance of a part of the wages fixed by the Railroad Labor Board for a given period does not *per se* waive the balance, nor does it operate *per se* as an estoppel. Estoppel and waiver must be raised by plea as a general issue.

3. COURTS. *Federal Railroad Labor Board order enforceable in state courts.*

The finding and order of the Railroad Labor Board created under the Transportation Act of 1920 (41 Stat. 456) as to wages when established in accordance with that act have the effect of an arbitration and award, and create an obligation that may be enforced in the courts. The act not having provided a court of exclusive jurisdiction, the right may be enforced in the state courts as other money obligations or contractual rights; service having been rendered under such finding.

4. CONSTITUTIONAL LAW. *Master and servant. Transportation Act giving labor board power to fix wages valid.*

The Congress is given power to regulate interstate and foreign commerce in broad and comprehensive terms in the Constitution of the United States, and this power is only limited by other provisions of the Constitution. The Transportation Act of 1920 (41 Stat. 456), giving power to the Railroad Labor Board, under the conditions therein provided, to fix wages of employees of such carriers, is valid. The act has a direct relation to interstate commerce, and logically tends to prevent the interruption or suspension of commerce. The wages fixed by the Labor Board are temporary in their nature, and do not unconstitutionally impair the right to contract.

APPEAL from circuit court of Marion county.

HON. G. WOOD MAGEE, Special Judge.

Suit by Ed Rhodes against the New Orleans Great Northern Railroad Company. Judgment for the defendant, and the plaintiff appeals. Reversed and remanded.

*Hall & Hall,* for appellant.

The first ground of demurrer is: "Because so much of the act of Congress on February 28, 1920, known as the Transportation Act, 1920, as attempts to authorize the Railroad Labor Board, created by said Act of Congress, to fix or regulate the wages of employees of carriers is null, void and unconstitutional and is in violation of the Fifth Amendment of the Constitution of the United States, in that it deprives this defendant of its property without due process of law, and deprives defendant of the equal protection of the laws.

It will be noted that this ground of demurrer questions the constitutionality of that portion of the Transportation Act of 1920, which authorized the Railroad Labor Board, created by said act, to fix or regulate the wages of employees or carriers.

We have carefully searched the authorities and we have been unable to find where any court of final jurisdiction has passed upon the constitutionality of the act in question. We find, however, that the district court of the United States, for the southern district of Texas, sitting at Houston, Texas, in the case of *Central Trust Company of New York,* complainant, v. *I. & G. N. Railroad Company et al.,* defendants, recognized the validity and binding effect of the decision of the United States Railroad Labor Board created by said act, for in passing upon this case the court finds, in the fourth paragraph of its judgment: "The court further finds, and is of the opinion that the rank and file of the members of this order did not realize and appreciate the illegality of their said actions, but were under the impression that they had a right to strike even as against the decision of the United States railroad Labor Board in order to accomplish what they deemed to be their rights.

It will thus be seen that at least one federal court is of the opinion that the act creating the Labor Board and the decisions of the Labor Board are legal and valid, and

binding upon the parties, and not violative of the Constitution.

We have carefully searched the authorities and while there are several cases which are good authority to sustain our contention, we will not burden the court with these because, there is one case identically in point, to-wit: The case of *Wilson* v. *New*, 61 Law. Ed. 755, decided by the supreme court of the United States on March 19, 1917.

Second: The second ground of demurrer is as follows: "That the alleged order of the Railroad Labor Board of July 20, 1920, fixing the prices of wages of track laborers on defendant's railroad at thirty-six and one-half cents per hour is null and void and repugnant to the provisions of the Fifth Amendment to the Constitution of the United States, in that it deprives this defendant of its property right to contract with its employees for compensation for their services, and denies to it the equal protection of the laws."

It will be noted that this raises the question of the constitutionality of the decision of the United States Railroad Labor Board whereby this board fixed the rates of pay of track laborers on the New Orleans Great Northern Railroad at the sum of thirty-six and one-half cents an hour.

If the Transportation Act is constitutional, then certainly it cannot be seriously contended that the order of the Labor Board is unconstitutional. However, in arguing this case in the court below, counsel for the railroad company seems to be under the impression that the same rate of pay was fixed by the Labor Board for all track, laborers on all railroads in the entire United States, and contended that this was unjust and inequitable and violative of the Constitution, arguing that the cost of living in the large northern cities is much higher than in the south, etc. Counsel, however, were mistaken and in order to show this, it is necessary to quote from the decision in question, of which the court will take judicial notice under the following authority: In the case of *Anton Caha* v. *U. S.*, 38 Law Ed. 415, 419, it is said: "It may be laid down as a

general rule deducible from the cases that whenever by the express language of an Act of Congress, power is intrusted to either of the principal departments of government to prescribe rules and regulations for the transaction of business in which they have a right to participate and by which they are to be controlled, the rules and regulations prescribed in pursuance of such authority become a mass of that body of public records of which the courts take judicial notice. Citing *U. S.* v. *Teschmakers,* 63 U. S. —, 22 How. 392, 405, *Romero* v. *U. S.,* 68 U. S. —, 1 Wall 721; *Armstrong* v. *U. S.,* 80 U. S. —, 13 Wall. 154; *Jones* v. *U. S.,* 137 U. S. 202; *Knight* v. *United Land Assoc.,* 142 U. S. 161, 169; *Jenkins* v. *Collard,* 145 U. S. 546.

Third: The third ground of demurrer is as follows: "That the Railroad Labor Board created by said act of Congress is a tribunal or board of special and limited jurisdiction and can render a decision or order only where there is a dispute between a carrier and its employees and an application has been made to said board to settle such dispute; or when in the opinion of the board such dispute is likely substantially to interrupt commerce; and it is not alleged in the declaration that there was a dispute between defendant and its employees and that an appeal to said board had been made, or that, in the opinion of the Labor Board, such dispute was likely substantially to interrupt commerce; and it is not alleged that such order of said Labor Board was duly given or made.

This ground, it will be seen, attacks the sufficiency of the allegations in the declaration. In other words, counsel seem to contend that it is necessary to allege in the declaration all of the facts and circumstances under which decision No. 2 of the Labor Board was rendered, and all facts which conferred jurisdiction on the board to render this decision, section 770 of the Mississippi Code of 1906, which is the same as section 553 of Hemingway's Code, provides: "In pleading a judgment or other determination of a court or officer of special jurisdiction, it shall not be necessary to state the facts conferring jurisdiction, but such

judgment or determination may be said to have been duly given or made; and the facts conferring jurisdiction shall be shown at the trial."

It is true that under the Transportation Act creating the Labor Board, it is necessary that there should be a dispute between the carrier and its employees before the Labor Board would have jurisdiction and authority to fix the wages of the employees, but we contend that it is not necessary under the foregoing section of our code to allege in the declaration what the facts are which conferred jurisdiction upon the board.

Fourth: The fourth ground of demurrer is: "Because it appears by the declaration that the plaintiff worked for the defendant from January 1st to June 30, 1921, at a wage of twenty cents per hour, without protest and without demanding pay at the rate of said thirty-six and one-half cents per hour for the period or any part of it and accepted pay at the rate of twenty cents per hour without protest.

It appears that the appellee is seeking to plead estoppel by demurrer. Estoppel as a general rule must be raised by a special plea, and is a ground for demurrer only where it clearly appears on the face of the pleadings. 10 R. C. L., 842-843. We invite the court's attention to the Transportation Act as a whole; it appears that enormous and undreamed-of guaranties were made by the United States to the carriers. Furthermore, liberal amendments were made in the Interstate Commerce Act, and in order to take care of the increase in wages given by the Labor Board, the Interstate Commerce Commission granted to the carriers liberal increases in freight and passenger rates. These increases in rates were made for no other purpose save to enable the carriers to pay, without hardship, the increased rates of wages of their employees, and every person in the whole nation today is paying the freight, through increased costs of the necessities of life on account of these increased rates. The appellee carrier in this case has derived and is now deriving additional revenue on accounts of these increases in rates, and every man, woman and child along its

line of railroad is affected thereby. (It has been repeated-
ly held that courts will take judicial notice of such matters
of public record and common knowledge.) Can the appel-
lee contend that it is just and equitable for it to receive
this increased revenue and then refuse to apply it where
Congress and the Interstate Commerce Commission in-
tended that it should be applied? We fail to comprehend
on what ground such conduct can be justified and in order
that the spirit and intention of the Transportation Act
may be carried out, we confidently await judicial interpre-
tation as will say to the carriers that the courts of the state
of Mississippi and the other states of the Union will not
permit such fraud to be perpetrated upon the public and
upon the humble employees without whom no train could
operate—such fraud, we repeat, as will allow the railroads
to take from the pockets of the people of America increased
freight and passenger rates, and then refuse to disburse
those increases through the channels in which the law con-
templates they should go.

*Mounger, Ford & Mounger,* for appellee.

The allegation of the declaration is that the rates of pay
of all track laborers in the maintenance of way department
of said railroad were fixed by the United States Railroad
Labor Board and the said fixing of said rates of pay was in
all respects legal and was authorized by the act approved
February 28, 1920. It is not alleged that there was a dis-
pute between the railroad company and its employees and
that the Railroad Labor Board having jurisdiction of the
parties and of the subject-matter in a proceeding to settle
this dispute duly gave and made a decision in settlement
thereof and had by this decision fixed the wages. If it had
been so alleged we can see that in accordance with section
770 of the Code of Mississippi, this would have been neces-
sary, however, in support of this pleading to have shown
the facts which give the court its jurisdiction. The facts
necessary to give the board jurisdiction will appear from
a consideration of subsection (6) under section 207 of the

Act of Congress above referred to and approved February 28, 1920. We shall not set out this section in full.

Referring thereto it will appear that a requisite to jurisdiction was that there should be a dispute and then the matter should be brought before the Labor Board in a certain manner, that is to say, in the manner particularly set out in the section referred to in sub-section (b), section 307. There should: (1) be an application made by the chief executive of a carrier or organization of employees, or sub-ordinate officials whose members were directly interested in the dispute, or, (2) there should be a written petition signed by not less than one hundred unorganized employees or subordinate officials directly interested in the dispute, or (3) the Labor Board should be of the opinion that the dispute was likely to substantially interrupt commerce and the board could then under any of the three circumstances mentioned, but under no other circumstances, proceed to hear and decide disputes with respect to wages or salaries.

When there was a dispute and unless the dispute was brought before the Labor Board in the manner above mentioned, and unless then the Labor Board duly made its decision, there would not be any legal decision at all. We therefore shall put aside for the moment any consideration of the terms of the board's alleged decision, and submit it does not appear from the declaration that there was a legal decision binding upon the appellee in the cause, yet this is a necessary part of the appellant's case that this should affirmatively appear.

Second. The act of Congress did not give the Labor Board the right to fix wages as the wages which the carrier was compelled to pay for the period in question, from January 1, 1921, to June 30, 1921. The act did not impose upon the carriers the obligation to pay after September 1, 1920, any wages or salary as fixed by the Labor Board. The act gave the Labor Board the right to declare the rate of wages which it considered just and reasonable (See sub-section (d), section 307 of the act in question) and the act pro-

vided that the carriers should pay each employee in accordance with a certain rate prior to September 1, 1920, but the act did not provide or require that wages should be paid in accordance with a certain rate after that time or for any period.  Up to September 1, 1920, the wages must be paid as Congress directed (See section 312, Act of February 28, 1920) section 312 of the Act provided as follows:  "Prior to September 1, 1920, each carrier shall pay to each employee or subordinate official thereof wages or salary at a rate not less than that fixed by the decision of any agency or railroad board of adjustment in connection therewith, established for executing the power granted the president under the Federal Control Act in effect in respect to such employee or subordinate official, immediately preceding twelve o'clock one minute A. M. of March 1, 1920."

The section quoted is the only one which commands and fixes the obligation as to what wages shall be paid.  In declaring that a carrier shall pay the rate as referred to in section 312, and in omitting to declare that the carrier should pay this rate for any other period, and in omitting to declare that the carrier should pay the rate which might be fixed by the Labor Board as reasonable, Congress manifested its intention that up to September 1, 1920, a certain rate must be paid and that after that time it should be a matter to be determined by agreement between the employer and the employee.

A decision by the Labor Board after having been presented in the manner provided by the act for a dispute having arisen between the carrier and its employees would well serve the purpose of indicating to the employees that they ought for the time being to work for those wages and at the same time would indicate to the carriers that they ought, for the time being, to pay those wages.  If after having the benefit of this declaration and help, the parties could not agree and would not agree, Congress declared that the public should be informed.  It should be fully and fairly informed by a tribunal instituted by the government

to give such information impartially.   In doing this, Congress did a great deal.   It brought to bear as against the offending party a very great and a very real force.   We therefore contend that Congress did not put upon the carriers the obligation to pay wages as fixed by the Labor Board except for the period prior to September 1, 1920. Neither did the Labor Board make any decision that the appellee was bound to pay wages as fixed by it for the period involved in this suit, but a necessary part of the plaintiff's case is that the plaintiff should establish that the carriers, the appellee, was placed under the obligation to pay these wages, the wages contended for, from January 1, 1921, to June 30, 1921.   In this the appellant has failed because the law gives no such authority and because the Labor Board did not assume to exercise any such authority.

Third:   We contend further, and in line with the interpretation which we have given the act, that the same must be construed as fixing wages for only the limited time expressed in the act, otherwise it would be unconstitutional and void.

Attorneys for appellant referred to the case of *Wilson* v. *New,* 61 L. Ed. 755, a case construing the Adamson Law, approved September 3, 1916, as an authority supporting their present contention.   We do not agree with them that *Wilson* v. *New,* supports their contention, but this case does throw some light on the question under consideration. In *Wilson* v. *New,* it was decided that Congress fixed a standard day's time for the employees in the railroad train service in interstate commerce according to which permanent wages must be paid.   The eight-hour standard was permanently fixed.   The fixing of the wage standard was not permanent but temporary, that is to say, for the time limit in section 2 of the act, a period which could not be shorter, under the terms of the act, than seven months nor longer than eleven months.

It is clear from a consideration of the language of the court in stating the proposition to be decided and in stating

what it did decide as well as from the argument made by
the court that the court did not intend to assert the gener-
al right of Congress to fix a permanent scale of wages for
railroad employees, but the court's holding shows that un-
der the conditions existing, the failure of the parties to
agree on a wage scale in view of the conditions existing
at that time, there was a right to fix wages as a necessary
remedy, and for a limited time until the parties could agree
themselves on a satisfactory wage. The effect of the deci-
sion is to deny Congress the power to fix wages perma-
nently.

If the act of February 29, 1920, which the appellant in-
vokes, be construed as we have indicated, we believe it
would be constitutional, otherwise we think it would not
be.

### *Appellant's Contention that the Appellee is Estopped.*

Counsel for appellant contend that the appellee, since
the trial of this case, has invoked the aid of the railroad
Labor Board and that it is now estopped to deny its au-
thority. Counsel asks the court to take judicial knowledge
of the fact that the appellee had done this. This would be
a strange procedure. The appellant must stand upon the
case made in his pleadings and upon the facts developed
at the trial. More than that, if the appellee has invoked
the aid of the Labor Board, it has asked the Labor Board
to make such decision as it may lawfully make. If the ap-
pellee has asked the Labor Board to make a decision which
it may lawfully make (as to whether it has or has not, we
are not informed), this affords no basis for the contention
that the appellee must be bound to do what the appellant
here contends for, that is to say, a thing which the Labor
Board had no right to compel the appellee to do.

We submit that the action of the court below in sustain-
ing the demurrer to the declaration was correct.

ETHRIDGE, J., delivered the opinion of the court.

The appellant, Ed Rhodes, was the plaintiff in the court below, and filed suit in the circuit court against the appellee, alleging that the appellee is a common carrier, and that for several years past the appellant has been employed as a section laborer, or track laborer, in maintaining its railroad tracks, and that appellant was so employed continuously between January 1, 1921, and June 30, 1921. It is further alleged that the rate of pay of all laborers on said railroad was fixed by the United States Railroad Labor Board on July 20, 1920, at the sum of thirty-six and one-half cents per hour, and that the fixing of said rates was in all respects legal and just, and was authorized by the act of Congress commonly known as the Transportation Act of 1920 (41 Stat. 456), and that the railroad company was bound thereby, and was compelled under the law to recognize the same, and to pay the appellant according to said rate fixed by said board, and that the railroad company did recognize the legality thereof, and did pay the plaintiff according to the same up to January 1, 1921, and since said date has failed to pay the plaintiff according to said rates; that said rates of pay fixed by said board remained unchanged continuously from July 20, 1920, to June 30, 1921, and that between the dates of January 1, 1921, and June 30, 1921, appellant worked for the appellee in the capacity aforesaid a total of one thousand, four hundred and forty-nine hours, for which labor he was entitled to receive thirty-six and one-half cents per hour under the decision of said Labor Board, but that he had only been paid twenty cents per hour for said time, leaving due him by the appellee the sum of two hundred and thirty-nine dollars and eight cents which is past due, owing, and unpaid, and which the appellee withholds and refuses to pay to plaintiff's damage, etc.

The declaration was demurrer to on several grounds:

First: Because so much of the act of Congress of February 28, 1920, known as the Transportation Act of 1920,

as attempts to authorize the Railroad Labor Board, created by said act of Congress, to fix or regulate the wages of employees of carriers, is null, void, and unconstitutional, and is in violation of the Fifth Amendment of the Constitution of the United States, in that it deprives defendant of its property without due process of law, and deprives defendant of the equal protection of the laws.

Second: That the alleged order of the Railroad Labor Board of July 20, 1920, fixing the prices of wages of track laborers on defendant's railroad at thirty-six and one-half cents per hour, is null and void, contrary to the Fifth Amendment of the Constitution of the United States, in that it deprives the defendant of its property right to contract with its employees for their services, and denies it the equal protection of the law.

Third: That the Railroad Labor Board created by said act of Congress is a tribunal or board of special and limited jurisdiction, and can render a decision or order only where there is a dispute between a carrier and its employees, and an application has been made to said board to settle such dispute, or when in the opinion of the board such dispute is likely substantially to interrupt commerce; and it is not alleged in the declaration that there was a dispute between defendant and its employees, and that an appeal to said board had been made, or that, in the opinion of the Labor Board, such dispute was likely substantially to interrupt commerce, and it is not alleged that such order of said Labor Board was duly given or made.

Fourth: That it appears from the declaration that the plaintiff worked for the defendant from January 1st to June 30, 1921, at a wage of twenty cents per hour, without protest and without demanding pay at the rate of thirty-six and one-half cents per hour for that period or any part of it.

Fifth: Because the Transportation Act does not impose any penalty upon or authorize any suit against a carrier for failure to obey or comply with any order of said Railroad Labor Board, and no jurisdiction, power, or author-

ity is by said act conferred on this court, or on any court, to render judgment in any suit to enforce any order of said board.

We will first dispose of the third, fourth, and fifth grounds of demurrer. Section 770, Code of 1906 (section 553, Hemingway's Code), reads as follows:

"In pleading a judgment or other determination of a court or officer of special jurisdiction, it shall not be necessary to state the facts conferring jurisdiction, but such judgment or determination may be stated to have been duly given or made; and the facts conferring jurisdiction shall be shown at the trial."

In our opinion this section is applicable to the orders of the Railroad Labor Board, and the declaration substantially complies with the requirement of this section as to pleading. The allegation of the declaration is that the board fixed the rate of compensation at thirty-six and one-half cents per hour, and that the fixing of said rates was in all respects legal, and was authorized by the act of Congress known as the Transportation Act of 1920. And it further alleges that the rate of pay as fixed by the Labor Board was legal and just, and that the corporation was bound thereby, stating the case as strongly as it is required to be stated by the section above mentioned in our Code. Under this section the facts conferring jurisdiction may be shown at the trial. The design of the statute is to save needless special pleadings, and to let the jurisdictional facts appear on the hearing, and, if there is any defect in the jurisdiction of the Railroad Labor Board, that can either be set up by pleas by the defendant challenging the jurisdiction of the board or it may be made to appear at the hearing. The allegations of the declaration are sufficient under the above statute to permit the plaintiff to show the facts when he comes to develop his case. Of course at the hearing it is necessary for the plaintiff to establish such action by the board as will enable him to maintain his action.

In reference to the fourth ground of demurrer, it does not appear from the declaration that the plaintiff waived

any right he may have had to recover the thirty-six and one-half cents per hour. The acceptance of part payment does not *per se* waive the right to demand the balance due. If there are any facts constituting estoppel or waiver, that may be raised by appropriate pleading. A demurrer does not lie to the declaration as drawn on this ground.

The fifth ground of demurrer challenges the jurisdiction of the court to entertain the suit because there is no express provision in the Transportation Act giving itself jurisdiction to this court or any court to render judgment upon the order of the board. It will be necessary to consider the provisions of the act and the powers conferred on the board thereunder to deal with this ground of demurrer.

In section 307 (b) of the Transportation Act of 1920 it is provided:

"The Labor Board, (1) upon the application of the chief executive of any carrier or organization of employees or subordinate officials whose members are directly interested in the dispute, (2) upon a written petition signed by not less than one hundred, unorganized employees or subordinate officials directly interested in the dispute, or (3) upon the Labor Board's own motion if it is of the opinion that the dispute is likely substantially to interrupt commerce, shall receive for hearing, and as soon as practicable and with due diligence decide, all disputes with respect to the wages or salaries of employees or subordinate officials of carriers, not decided as provided in section 301. The Labor Board may upon its own motion within ten days after the decision, in accordance with the provisions of section 301, of any dispute with respect to wages or salaries of employees or subordinate officials of carriers, suspend the operation of such decision if the Labor Board is of the opinion that the decision involves such an increase in wages or salaries as will be likely to necessitate a substantial readjustment of the rates of any carrier. The Labor Board shall hear any decision so suspended and as

soon as practicable and with due diligence decide to affirm or modify such suspended decision."

Section 301 of the Transportation Act of 1920, referred to, provides:

"It shall be the duty of all carriers and their officers, employees, and agents to exert every reasonable effort and adopt every available means to avoid any interruption to the operation of any carrier growing out of any dispute between the carrier and the employees or subordinate officials thereof. All such disputes shall be considered and, if possible, decided in conference between representatives designated and authorized so to confer by the carriers, or the employees or subordinate officials thereof, directly interested in the dispute. If any dispute is not decided in such conference, it shall be referred by the parties thereto to the board which under the provisions of this title is authorized to hear and decide such dispute."

Section 307 (d) of the Transportation Act of 1920, provides:

"All the decision of the Labor Board in respect to wages or salaries and of the Labor Board or an Adjustment Board in respect to working conditions of employees or subordinate officials of carriers shall establish rates of wages and salaries and standards of working conditions which in the opinion of the board are just and reasonable. In determining the justness and reasonableness of such wages and salaries or working conditions the board shall, so far as applicable, take into consideration among other relevant circumstances:

"(1)   The scales of wages paid for similar kinds of work in other industries;

"(2)   The relation between wages and the cost of living;

"(3)   The hazards of the employment;

"(4)   The training and skill required;

"(5)   The degree of responsibility;

"(6)   The character and regularity of the employment; and

"(7)  Inequalities of increases in wages or of treatment, the result of previous wage orders or adjustments."

It will be seen from this act that the board is given power to establish rates of wages and salaries in cases therein provided for.  The purpose of the act is to establish a legal tribunal with power to fix the rate of wages between carriers and their employees and subordinate officials when they cannot be settled by agreement, to the end that commerce may not be interrupted.  In our view the act creates a system of compulsory arbitration with notice to the parties and a right to produce evidence, and the finding of the board in the cases provided for in the act has the effect of an award.  The purpose of Congress was to prevent the possibility of tying up the transportation of the country during disputes as has been done heretofore in numerous cases, and has been threatened in cases of such magnitude as to seriously jeopardize the business and welfare of the country.  The living and business conditions of the great public are dependent upon the carriers for the transportation of the necessaries of life, as well as ordinary articles of utility.  The legal effect of the action of the board is to fix, for the time being. (a temporary period), the wages and salaries of the employees until the parties can agree upon such wages or salaries, or can make other arrangements with other men for the carrying on of the business of the carrier.  It has the effect, in our opinion, of giving a right of action against the carrier by the employee or official for the salary so fixed under the provisions of the act if services are performed thereunder, and the courts are open for the enforcement of this obligation.  The courts are open to the carriers also.  Of course it was within the powers of Congress to fix the conditions upon which suits could be brought, or the courts in which the obligation could be enforced.  But, Congress having designated no tribunal to take cognizance of the matter, any court having jurisdiction of the parties and subject-matter may enforce the obligation as in the case of any other money obligation or contractual right.

This brings us, then, to the question of the constitutionality of the act.

Congress has been given the power to regulate interstate commerce in broad and comprehensive terms. This power, being given by the Constitution, is only limited by other provisions of the Constitution. The act in question seems to us to have been drawn under the decisions of *Wilson* v. *New,* 243 U. S. 332, 37 Sup. Ct. 298, 61 L. Ed. 755, L. R. A. 1917E, 938, Ann. Cas. 1918A, 1024, in which case the court considered the power of Congress under the Adamson Act (U. S. Comp. St., sections 8680a-8680d) to legislate with reference to a grave situation involving, among other things, the right to fix wages and hours for employees, and upheld the power of Congress so to do. The applicable authorities, are found in that opinion and in the elaborate briefs before the United States supreme court in that case as set out in 61 L. Ed. 775 et seq. • The power conferred in the present act to fix wages is not a fixing of wages permanently, but a temporary fixing of wages with full power of the Labor Board to modify its orders as exigencies may arise.

We deem it unnecessary to go into an elaborate discussion of the subject, but the power of Congress to regulate interstate commerce has been upheld and applied to many situations, and must, in the nature of things, be sufficient to meet the demands of the age and conditions with which Congress, from time to time, is called to deal. The powers conferred must be brought into exercise in many situations and conditions which the framers of the Constitution did not foresee. When dealing with a power of this kind, we must remember that conditions change from age to age. The carriers of the country have been organized into huge transportation systems, employing hundreds of thousands of employees; and labor has been organized into organizations containing many hundreds of thousands and even millions of men. With the growth of commerce the public have become dependent in a large measure upon the transportation systems for the carrying on of its business throughout the country, and a strike or tie-up of the transportation systems would result in untold suffering and loss

to the public. The evils of the situation and the magnitude of the problem such as threatened the country when the Adamson Act was passed has been drawn in vivid colors in the supreme court of Kansas in the case of *State* v. *Howat,* 109 Kan. 376, 198 Pac. 686 et seq. The magnitude of the organization of capital has been dealt with in numerous cases affecting the federal Anti-Trust Acts (U. S. Comp. St., section 8820 et seq.) in decisions of the United States supreme court.

The power of the government must be capable of meeting these changed conditions, and is sufficient when called into power through appropriate legislation to protect commerce and transportation from suspension or interruption. The means by which the object is accomplished must be left to the judgment and discretion of the legislative branch of the government. The act here under review is adapted to this purpose, and logically tends to the prevention of the suspension or interruption of interstate commerce.

We do not think the act here under review unconstitutionally abridges the freedom of contract, nor that it deprives the defendant of its property without due process of law. As pointed out in *Wilson* v. *New, supra,* and numerous other cases, the fact that a business is affected with the public use makes it different from, and its right of contract also different from, that of ordinary business. This is pointed out clearly in the majority opinion in *Wilson* v. *New, supra.* Mr. Justice McReynolds in his dissenting opinion closes his opinion with this language:

"But, considering the doctrine now affirmed by a majority of the court as established, it follows as of course that Congress has power to fix a maximum as well as a minimum wage for trainmen; to require compulsory arbitration of labor disputes which may seriously and directly jeopardize the movement of interstate traffic; and to take measures effectively to protect the free flow of such commerce against any combination, whether of operatives, owners, or strangers."

It follows from what we have said that the judgment of the court below must be reversed, and the cause remanded.

*Reversed and remanded.*