## PANHANDLE & S. F. RY. CO. v. CURTIS. (No. 2026.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 1, 1922.)

**1. Master and servant 69—Federal act does not take away right of individual employee to resort to courts.**

In the absence of a request to refer a dispute to the Railroad Board of Labor Adjustment as provided by Transportation Act Feb. 28, 1920, tit. 3, §§ 301–303, 307, the act does not take away the right of individual employee to first resort to the courts to adjudicate his rights.

**2. Master and servant 69—To abate railroad employee's suit claim must be within jurisdiction of boards named by federal act.**

To abate a suit by an employee against a railroad, it should be alleged and proven that a request to refer the dispute to the Railroad Board of Labor Adjustment was made as provided by Transportation Act Feb. 28, 1920, tit. 3, §§ 301–303, 307, and that the claim was within the jurisdiction of the boards named in the act.

**3. Arbitration and award 1—Party may waive right to resort to courts.**

Where a party is to be deprived of his right to resort to the courts, it should appear that he has by agreement waived that right or consented that other instrumentalities shall be used to determine it.

**4. Master and servant 43—Reasonable time of hiring question of fact.**

Where it is alleged that a hiring was entered into for a reasonable time, such time is a question of fact.

**5. Master and servant 3(1)—Recovery of wages for reasonable time on contract alleged held not authorized.**

In an action for alleged breach of contract to employ plaintiff as a machinist in defendant's railway shops, pleadings *held* not to authorize a recovery for wages for reasonable time; there being no allegation of a consideration paid for the right of employment, and the contract as alleged as to time of service being indefinite or determinable by either party.

Appeal from Hemphill County Court; J. E. Stephens, Judge.

Suit by E. N. Curtis against the Panhandle & Santa Fé Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Hoover, Hoover & Willis, of Canadian, for appellant.

Will Crow, of Canadian, for appellee.

HUFF, C. J. This suit was instituted in the county court of Hemphill county, Tex., by E. N. Curtis, against the Panhandle & Santa Fé Railway Company to recover damages in the sum of $448.37, for the alleged breach of a contract to employ Curtis as a machinist or railway engine inspector, at the shops of the defendant, in the city of Amarillo. The defendant answered by general and special exceptions, plea in abatement, general denial, and some special pleas. The pleadings will be noticed more in detail hereafter. The case was submitted to a jury by a general charge, and the jury returned a general verdict in favor of the appellee, for the sum of $188.74, for which judgment was rendered.

Proposition 11, though the last presented in the brief, in the natural order, first demands determination. It is in effect that the plea in abatement should have been sustained as, under the rules of the national agreement between the employees and the railway company and orders of the United States Labor Board, the appellee failed to pursue the remedy therein prescribed to adjust his grievances, which was a condition precedent to his right to sue in the courts on his alleged cause of action. The plea sets up in this case that the plaintiff has failed to pursue his remedies before the United States Labor Board or through the channels constituted to determine such disputes; that plaintiff had been an employee of appellant and had only been suspended or dismissed

for the purpose of reducing the force and that the act of Congress which provided for a Railroad Labor Board provided that other boards of adjustment be established by agreement between the carriers and employees for the hearing of grievances and that the Labor Board should have power to make regulations of disputes, etc.; that the Labor Board had continued in force what is known as the "Rules of National Agreement," which prevailed at the time of plaintiff's alleged grievances; that he had not submitted his grievances to the authority so constituted, which was a condition precedent to his right to sue in the courts.

The master mechanic at Amarillo testified, under the rules promulgated under the national agreement, that the plaintiff should have presented his grievances first to the round house foreman; then to the general foreman; then to the witness, who was master mechanic; then to the mechanical superintendent; then to the general manager of the railroad; and if he appealed to Mr. Greggs, who he states was in charge of the personnel, then from him to the Labor Board. The appellant offered in evidence certain rules headed:

"Agreement between United States Railroad Administration and Employees Represented by the Railway Employees' Department of the American Federation of Labor and its Affiliated Organizations of the Mechanical Section and Divisions Nos. 1, 2 and 3, thereof."

These rules so offered in evidence provided, when necessary to reduce expenses, the force should be reduced as per seniority under a named rule, providing for restoration according to seniority. The rules also provide that if any employee believes he has been unjustly dealt with, the case can be taken to the foreman, general foreman, master mechanic, shop superintendent, each in their respective order by an authorized local committee or their representative. If the decision is unsatisfactory, the committee can appeal to the higher official designated to handle the matter. The appeal is there provided to be to the highest designated railroad official and the duly authorized representative of the employees, and there is still a further appeal provided for to the chief executive of the railroad and the chief executive of the Railroad Employees' American Federation of Labor for adjustment and for final disposition. After the organization of the "Railway Labor Board," that body, by decision, continued in force the rules established under the authority of the United States Railroad Administration, with certain exceptions or qualifications, as evidenced by excerpts from decisions by the Board, brought up in this record.

The adoption of the rules will put in force only such, we should think, as are in accord with the act of Congress authorizing the creation of the Labor Board. Unless that body is empowered to create subsidiary tribunals or bodies to hear and adjust grievances, we do not believe continuing in force rules which recognize certain officials in railroads and labor organizations as triers of certain complaints under government administration will be perpetuated and employees first required to seek redress before such authority.

Under the "Transportation Act of 1920" and "Title 3 [41 Stat. 469], Disputes between Carriers and Their Employees and Subordinate Officers," a "Railroad Board of Labor Adjustment," designated "Adjustment Board," and "Railway Labor Board," designated "Labor Board," were authorized to be created. Section 301 of the act enjoins upon the carriers and employees to exert every reasonable effort and adopt every available means to avoid interruption to the operation of the carriers growing out of disputes, etc. "If any dispute is not decided in such conference, it shall be referred by the parties thereto to the Board which under the provisions of this title is authorized to hear and decide such disputes." Section 301. The Adjustment Board may be established by agreement between any carrier and any employees or subordinate officers of carriers or organization or group of organizations thereof. Section 303 reads:

"Each such Adjustment Board shall, (1) upon application of the chief executive of any carrier or organization of employees or subordinate officials whose members are directly interested in the dispute, (2) upon the written petition signed by not less than one hundred unorganized employees or subordinate officials directly interested in the dispute, (3) upon the Adjustment Board's own motion, or (4) upon the request of the Labor Board whenever such board is of the opinion that the dispute is likely substantially to interrupt commerce, receive for hearing, and as soon as practicable and with due diligence decide, any dispute involving only grievances, rules, or working conditions, not decided as provided in section 301, between the carrier and its employees or subordinate officials, who are, or any organization thereof which is, in accordance with the provisions of section 302, represented upon any such Adjustment Board."

This section is followed by others authorizing the creation of the Labor Board, which also provides for the appointment of its members and their qualification and eligibility. Section 307 provides if an Adjustment Board is not organized the Labor Board may hear and decide disputes involving grievances, etc., and subdivisions thereof, (b) may hear and decide with respect to the wages or salaries of employees. Such power or authority so given the Labor Board is granted on the application of the parties named in section 303.

[1-3] We take it under these provisions unless the application is made by the groups

named or the Labor Board or the Adjustment Board, upon their own motion, when it is of the opinion that the dispute is likely substantially to interrupt commerce that neither Board has jurisdiction. There is no application alleged to have been made by either group of employees to determine the dispute in this case, and there is no proof of such application. In the absence of a request, the act of Congress does not take away the right of the individual employee to first resort to the courts to adjudicate his rights. We are impressed with the view that it was the purpose of Congress to afford a tribunal to the carriers and the organization of employees as groups to adjust rules, working conditions, and wages affecting the members in their collective capacity and which are common to all. That it was not the purpose to establish a court to try the individual rights of the employee in which he alone has a personal right or interest, and which does not necessarily affect interstate commerce. Whether this view is correct or not, we think it is apparent the application must be made as provided in the statute. And in order to abate a suit it should be alleged and proven such request was made and that the claim is within the jurisdiction of the boards named in the act. This has not been done in this case. The appellee is not alleged to be a member of an organization of employees or that he is an employee, falling under the term "unorganized." If the latter, then the application must be by petition of not less than 100 unorganized employees. Where a party is to be deprived of his right to resort to the courts, it should appear as a general rule, we think, that he has by agreement waived that right or consented that other instrumentalities shall be used to determine it. The act in question does not seem to us to have taken his right away or intended to do so. He might he held to have consented if he belonged to one of the groups named which had made application, as required by the statute, by his group or others, if his right is one that is embraced in the disputes which may be determined by the Board.

It would seem under a recent case in Mississippi, Rhodes v. Ry. Co., 91 South. 281, if the Labor Board has fixed the wages of employees this would be treated as an award upon which the employee can sue in the proper courts to recover the amount due him. The question of jurisdiction of the Labor Board to determine the wages was pretermitted in that case as the Code of that state did not require a complaint upon an award to state the facts giving the jurisdiction of the tribunal rendering the judgment or award. That case passed upon only the demurrers to the complaint of petition, of the employee, the plaintiff. We overrule the assignment and propositions as to the court's action on the plea in abatement.

The appellant presents several propositions, predicated on its general exceptions, and a request for an instructed verdict in its favor. The material proposition presented amounts to the assertion that the pleadings and proof of the contract of hiring as to the duration of the service was indefinite, and the court cannot award substantial damages for a breach thereof, as it was wanting in certainty.

The amended petition alleges in effect that on June 28, 1921, appellant and appellee entered into a contract of hire, wherein appellant hired appellee in the machine shops of appellant at Amarillo, Tex., in the capacity of an engine inspector, and agreed and promised to pay for such service 77 cents per hour for eight hours per workday, and seven days per week, which is the usual, reasonable, and customary consideration for said services paid by appellant to its employees for the service contracted. That on the above date, through its agent, appellant wired appellee, who at that time was located in the town of Ogdenberg, N. Y., as follows:

"Your services required at Amarillo. Report as soon as possible, advising when may expect."

On that day appellee wired accepting the same:

"Will leave for Amarillo Monday, July fourth. Please wire transportation from Chicago to Amarillo."

On the 29th of June the appellant answered the above:

"Not consistent to furnish transportation. You should make arrangements through Report at Amarillo immediately."

In accordance with the terms appellee did report for service on the 7th day of July, 1921, at the machine shops of appellant at Amarillo, and offered his services as engine inspector. That the appellant refused to accept his services in that or any other capacity. It is also alleged that he did report at the shops within a reasonable time from the 28th of June; that the refusal to accept appellee's services forced him to seek other employment from July 7 to October 18, 1921, and that he had been able to earn thereat only $257; that had he been allowed service with appellant he would have earned $634.88, working the allotted time at 77 cents per hour, from July 7 to October 18, 1921, which was the usual, reasonable, and customary consideration for such services, the difference sued for being $377.48, which appellee alleges he has suffered by way of actual damages in consequence of the breach of the contract of hiring set out; that the time between July 7th and October 18th is the reasonable time that said contract would have continued in force between the parties and was taken in

consideration and contemplation of the parties; that appellee was ready, able, and willing to carry out the contract at all times since June 28, 1921; that he again went to Amarillo October 14, 1921, and reported for duty, where he was again refused employment; that he had been compelled to furnish his own transportation from Ogdenberg, N. Y., to Amarillo, Tex., for which he paid the sum of $70.89, and that he was actually damaged in that sum by reason of the breach of the contract, and that appellant had refused to pay the damages sustained or any part thereof, the damages sued for totaling the sum of $448.37.

The facts tend to show that the appellee had been in the employment of appellant for some time in the capacity of engine inspector, previous to having been laid off in order to reduce the working force and expenses, May 26, 1921. The appellee, after having been discontinued, went to New York as alleged, where he received and sent the telegrams as alleged in the petition. He left New York on the 3rd of July via Chicago. The evidence will justify a finding that he reported to appellant at Amarillo within a reasonable time for work, and that he did not unnecessarily delay in presenting himself for service. His testimony is sufficient to show that when he presented himself to the master mechanic, Flanders, who was then authorized to employ and discharge employees in the shops, and who had sent the telegrams, that he reported to Flanders for work, and that he (Flanders) told appellee he could not use him. The appellee then left and sought work elsewhere, giving the work he had done and the amount received therefor, as alleged. The evidence is sharply conflicting as to whether Flanders refused to accept the services of appellee, when tendered. The testimony also shows that when he was suspended in May the wages were 85 cents per hour for the work he was doing, but in the meantime, by order of the Labor Board, it was reduced to 77 cents per hour for eight hours per day, and seven days per week; that this was the scale of wages which appellant was paying when the telegrams were sent and when appellee applied for work at Amarillo. The evidence justifies the finding that when the appellee was suspended in May it was done to reduce expenses under the rule as to seniority, which was provided should govern, and in the restoration of the forces senior laid-off men were to be given preference for re-employment within a reasonable time, and returned to their former position. An employee who had been in the service of the railroad for 30 days was not to be dismissed for incompetency, neither should any employee be discharged for any cause without first being given an investigation. If it should be found that an employee had been unjustly discharged or dealt with, such employee should be reinstated with full pay for all time lost. It seems that the appellee offered his services to another superintendent. The time is not definitely stated in the evidence. The superintendent stated he was not obligated to do anything for the appellee, but did later write appellee a letter, October 22d or 23d, offering a job as machinist's helper, but after this suit was filed. Mr. Flanders testified he wired appellee in the observance of the rules with reference to re-employment of the men in order of seniority; that they would have put Mr. Curtis to work in the capacity of engine inspector and paid him 70 cents per hour, or the standard rate. This was a compulsory measure; that is, that he should wire for Curtis to come back. That Curtis' services had been fairly good. The evidence is sufficient to sustain the finding that Curtis was not refused work on account of his inefficiency. Other testimony relating to the question of the refusal to employ appellee or whether appellee reported immediately or at once, or within a reasonable time, will not be necessary to further notice at this time.

[4] It is urged by proposition that as the appellee alleged an agreement to pay 77 cents per hour, and since he set out the telegram as constituting the contract which does not stipulate for such compensation, appellee should not recover in this case. The petition does allege an agreement, but it also alleges this was the reasonable and customary price for such labor and was the compensation in contemplation of the parties at the time. The evidence amply shows the wages alleged were fixed by the rules for the employees, approved by the Labor Board, and that was the price paid by the appellant to the craftsmen so engaged, and that appellant sent the wires in obedience to the rules. We think the trial court was justified in overruling the general exception to the petition on that ground, and that he would not have been justified in instructing a verdict for appellant upon that issue. Whether the terms of the contract as alleged are so indefinite as to the term of the service that a general demurrer will reach it is a question of some difficulty and upon which the authorities are not agreed. It is alleged a hiring was entered into for a reasonable time. Such time will necessarily be a question of fact. Our Supreme Court has said:

"It is very generally, if not uniformly, held, when the terms of service is left to the discretion of either party or the terms left indefinite, or determinable by either party, that either may put an end to it at will, and so without cause. Harper v. Hassard, 113 Mass. 187; Coffin v. Landis, 46 Pa. St. 431; Wood, Mast. & Serv., 133, 136, and citations. When such a state of agreement exists it is no breach of contract to refuse to receive further services, and a refusal to accept any at all, would seem, at most would entitle the engaged

servant only to nominal damages." East Line R. R. Co. v. Scott, 72 Tex. 70, 10 S. W. 99, 13 Am. St. Rep. 758.

This we believe is generally recognized by our courts. Railway Company v. Griffin, 106 Tex. 477, 171 S. W. 703, L. R. A. 1917B, 1108; Hickey v. Kiam (Tex. Civ. App.) 83 S. W. 716; Railway Co. v. Newby (Tex. Civ. App.) 41 S. W. 102; El Paso Gas Co. v. El Paso, 22 Tex. Civ. App. 309, 54 S. W. 798; Railway Co. v. Matthews, 64 Ark. 398, 42 S. W. 902, 39 L. R. A. 467; Railway Co. v. Offutt, 99 Ky. 427, 36 S. W. 183, 59 Am. St. Rep. 467; Bowen v. Chenoa-Hignite Coal Co., 168 Ky. 588, 182 S. W. 635. In the Scott Case, supra, the Supreme Court held as the employee had paid a consideration for the right of employment, it was optional with him to fix the time of employment when he tendered his services, and if he did not do so the contract would not meet the requirement as to definiteness, such as would support an action for damages for its breach. In that case the court cites and quotes from the case of Bolles v. Sachs, 37 Minn. 315, 33 N. W. 862, with approval. Later our Supreme Court, in discussing an option which was with the employer, said:

"The case is not the same as those in which there is a promise to employ and in which no time is fixed and no option reserved. In such cases some authorities would hold that, if the person to be employed has rendered a consideration for such a promise, he acquires the option of fixing the term of employment [citing the Scott Case, supra]; and others that he acquires the right to employment for a reasonable time." Railway Co. v. Smith, 98 Tex. 47, 81 S. W. 22, 66 L. R. A. 741, 107 Am. St. Rep. 607, 4 Ann. Cas. 644.

There is no allegation in this case of a consideration paid for the right of employment by appellee. The contract as alleged as to the time of service is indefinite or determinable by either party. Under our decisions as we understand them, there would be no implied obligation for a reasonable time for service. It may be under the Bolles Case, cited by the Supreme Court in the Scott Case, appellant could not, by abruptly breaking the contract by refusing to give the appellee employment, deprive him of the right to exercise his option to fix a definite and reasonable period of service if in fact he had an option under the facts of this case. The appellee, however, does not allege such facts as will present that issue. While the evidence in this case tends to show that appellee had been in the employment of the appellant as an engine inspector, and that he had been suspended under the rule authorizing a discharge to reduce expenses, and that under the rules then in force appellant was required within a reasonable time to give appellee re-employment at the same service under the seniority rule, and also if he was wrongfully discharged he could, upon establishing that fact, be rein-

stated and recover the wages he should have received up to his reinstatement, appellee by his evidence indicates he was not relying upon the rules as in any way entering into the contract for hire. Certainly his pleadings do not make the rules as to the time of his service part of the contract, or that it was made in contemplation of the rules. We do not believe under the pleadings and the evidence that we are justified in looking to the rules in order to make definite the contract as alleged. If the appellee desired to fix the amount of his recovery upon the award of the Labor Board, he should have declared thereon. If he had done so, perhaps under the rules a contract so established would be of sufficient definiteness as would authorize a suit for damages for its breach. This, however, we do not determine, but refer to the case of Rhodes v. Railway Co. (Miss.) 91 South. 281, recently decided, which may have some bearing on the question here at issue.

It is also asserted as a proposition that as the appellant did not agree to furnish transportation from New York to Texas, the appellee shows no cause of action for recovery of the $70 paid for railroad transportation.

[5] The contract pleaded and proved may not be said to be void in its entirety, but only uncertain as to the period of service. An obligation, the nature of which or extent of which is unknown, will not give the measure of damages for the breach, but the failure to accept any service at all will, it seems, give at least nominal damages which would at least save the costs. "The circumstance of agreeing on weekly, monthly or half-yearly payment of wages may be sufficient of itself to create the presumption of hiring for the period covered by each payment, and so it has been held quite uniformly that a hiring at a specified sum per month imports an engagement by the month." 18 R. C. L. "Master & Servant," § 19, p. 508. The above principle we think is recognized in a case where an engineer sued upon a contract in which it was alleged the compensation for running a train was so much per mile, and when he was called upon to make a trip and was refused employment the court held he could only recover for that trip. Texas Central Railway Co. v. Newby (Tex. Civ. App.) 41 S. W. 102. In so far as the services were in part performed, the appellee could recover, and the contract was enforceable to that extent and was not absolutely void. For the reasonable expenditures already incurred the appellee should be made whole, and for his loss and expenditures in an effort to comply with the agreement to enter upon the service which had been agreed upon and which agreement was wrongfully breached. U. S. v. Behan, 110 U. S. 338, 4 Sup. Ct. 81, 28 L. Ed. 168. In this case if the appellee had been given employment under the contract the appellee could not have recovered his expenses

in seeking or going to the place of employment, or if he should recover wages for a specified time under the agreement possibly he could not recover for the expenditures in going to his employment. Allowing both expenditure and wages under such circumstances would be permitting a double recovery. However, if the appellant wrongfully refused to give him employment after he had made his application under the agreement, knowing that he had made the expenditures to meet his obligation, and thus knowing that he would be required to make such expenditures appellant entered into the contract, it would seem to us that appellant should be required to make good the loss so sustained by appellee. It would seem the principle recognized in the case of Railway Co. v. Jackson, 29 Tex. Civ. App. 342, 69 S. W. 89 (4), would apply in this case, while the facts are not quite analogous to these. See, also, Osage Oil Refining Co. v. Lee Farm Oil Co. (Tex. Civ. App.) 230 S. W. 518 (1-3). Under the pleadings and the evidence the court should not have authorized a recovery for wages for a reasonable time, and, while perhaps an instructed verdict was not authorized, yet it called in question the right to recover the wages, especially when taken in connection with the general exception to the petition.

The charge of the court is also subject to the criticism that it was on the weight of the testimony and also assumed certain facts. However, it is unnecessary to further discuss the charge of the court.

The judgment, for the reasons above given, will be reversed, and the cause remanded.