### EL PASO GAS, ELECTRIC LIGHT AND POWER COMPANY v. CITY OF EL PASO.

Decided December 6, 1899.

**1. City Council—Veto Power of Mayor.**

Where a city charter gives the mayor veto power over "all ordinances and resolutions," and upon the submission of a report by a committee of the city council recommending that the city enter into a contract for lighting the streets therein stated and proposed, a verbal motion to adopt the report is made and carried, such action is subject to veto by the mayor, as being, in effect, a "resolution" of the council. City of Galveston v. Morton, 58 Texas, 409, criticised.

**2. Contract—Mutuality Essential—City Lighting.**

Where a contract for lighting a city provides that the lighting company shall furnish as many lights as the city may designate, at so much per light, without in any way itself designating the number of lights or furnishing a criterion by which damages for violation of the contract may be determined, it is void for want of mutuality, and will not support an action where the city declines to make the designation.

APPEAL from El Paso. Tried below before Hon. A. M. WALTHALL.

*Millard Patterson* and *C. N. Buckler,* for appellant.

*Wyndham Kemp,* for appellee.

FLY, Associate Justice.—Appellant instituted this suit against appellee to recover the sum of $1470.80 on an express contract for lighting the city for a period of three months. Appellee pleaded a general denial and that the motion authorizing the contract had been vetoed by the mayor, and that the city was not liable on the contract because it lacked mutuality, and was therefore void. The cause was tried by the court and judgment rendered in favor of appellee.

On the 26th day of January, 1899, appellant proposed to the city council, at a regular meeting thereof, to light the streets of El Paso upon certain terms for a certain time, and the proposition was referred to a committee which reported favorably upon it. "Whereupon it was moved and seconded that the report of the committee be adopted and the proposition be accepted, and that the mayor be authorized and instructed to enter into a contract with the El Paso Electric Light and Power Company under the terms and conditions of the proposition submitted by said company, for the term of five years." The motion was carried, and the following day a contract, prepared by the attorney of appellant, was signed by it and the mayor of El Paso. The contract is as follows:

"This contract, made and entered into this 27th day of January, 1899, by and between the city of El Paso, a municipal corporation, party of the first part, and the El Paso Gas, Electric Light and Power Company, a corporation duly incorporated under the laws of the State of Texas, party of the second part, witnesseth: That for and in consideration of $9.25 per light, per month, in cash, or its equivalent in city warrants, to be paid monthly, the said party of the second part agrees to furnish the city as many electric lights as the city may designate, of 1200 candle-power each, to be lighted and turned off by moon schedule. Said lights shall be placed at such places as the City of El Paso through its city council may direct; provided, however, that the said party of the second part shall not be compelled to run more than 990 feet of line between lights for more than 25 per cent of all lights ordered by the city, and for other lights not more than 660 feet of line between lights. It is further stipulated that said lights shall not be hung less than twenty-five feet higher than the grade of the street. The power of the lights shall be governed, tested, and regulated by any standard device for testing the same; and should said party of the second part fail to furnish 1200-candle power lights, a proper reduction shall be made in proportion to the power furnished; and should said second party fail for sixty days after notice to remedy said lights so as to have the same reach the standard of 1200-candle power, then the city shall, at its option, abandon said contract and terminate the same.

"This contract shall take effect and be in force from and after the first day of February, 1899, and shall continue in force for the term of five years from that date:

"It is further stipulated that lights shall be hung in the center of cross streets in all cases where, in the judgment of the city council, a

better result can be obtained than by hanging them at the corners of the streets. The party of the second part shall furnish all lights required after thirty days notice from the city council that such lights are desired and have been ordered; and the said second party further obligates itself to remove and replace all such lights as the city council may designate, the cost of such removal to be paid by the said party of the first part.

"In testimony whereof, the parties heve hereunto set their hands and seals, this the date and day first above written, by virtue of resolutions upon the part of the representative body of each corporation. Signed and delivered in duplicate."

On the 31st of January the mayor wrote a message vetoing the motion authorizing the contract, on the grounds that it did not provide for reasonable rates to private parties, and that it was for too long a period. The message was submitted to the city council on February 2d, their action reconsidered, and the veto sustained by an unanimous vote. Prior to the making of the contract herein set forth appellant had furnished the city with lights at places designated by it, and for the months of February, March, and April appellant furnished the lights at places designated under former contracts, and on April 27th presented the account to the council for the amount sued for. The account was referred to the finance committee, which reported as follows:

"Your committee, to whom was referred the bills of the El Paso Gas, Electric Light and Power Company for the months of February, March, and April, beg leave to report as follows:

"If the said bills at their present figures are intended to be a voluntary reduction in the prices heretofore paid by the city and not presented in furtherance of the alleged contract heretofore vetoed by the mayor, we recommend that they be paid, with the express understanding, however, that such payment shall not in any way be considered as a recognition of the validity of said contract, nor of its ratification, nor of its existence by this council. Should this not be acceptable to the parties interested, we suggest that they may be allowed to withdraw said bills and present others if they see fit to do so."

The report was adopted. Appellant knew of the action of the mayor in vetoing the resolution authorizing the contract, and knew the council had sustained his action.

The charter of El Paso provides that: "All ordinances and resolutions adopted by the council shall, before they take effect, be placed in the office of the city clerk, and if the mayor approve thereof he shall sign the same, and such as he shall not sign he shall return to the city council with his objections thereto." Five days are given in which the veto power can be exercised.

As above noted, the report of the committee appointed to consider the proposition made by appellant to light the streets was adopted upon a motion, and, although there is no proof to the effect that it was

verbal and not in writing, it has been treated by both parties as though it was not in writing, and will be viewed in that way by this court. It is the contention of appellant that being merely a verbal motion, the approval of the mayor was not necessary, and that he had no power or authority under the charter to veto the action of the council, as that instrument authorized the veto of ordinances and resolutions, and not verbal motions. Under the provisions of a charter almost identical, as to the veto power granted to the mayor, the Supreme Court of Texas in the case of the City of Galveston v. Morton, 58 Texas, 409, said: "The charter requires that all ordinances and resolutions, before they take effect, shall be placed in the clerk's office for action by the mayor. This was neither an ordinance nor resolution in a proper sense of the term, so as to be liable to objections on the part of the mayor. It is not termed such in the proceedings of the council, and has none of the features of either. It was a verbal motion, and referred solely to the acceptance of a proposed contract on the part of appellee." If the declarations quoted be the law, the provision authorizing the mayor to approve or disapprove of matters passed by the city council can, in a majority of cases, be evaded simply by passing verbal motions instead of written resolutions, and things of the most vital interest to the city be passed by the council without at all consulting the chief executive and most important officer in the municipality. There may be, and doubtless are, trivial questions that can be disposed of by a city council without the assent of the mayor, but we do not believe that it was ever intended by the Legislature of Texas that contracts of many years duration, involving the expenditure of thousands of dollars, could be made by a mere majority of a city council, without the approval of the mayor. The veto power has been placed in the hands of executives of the Federal, State, and municipal governments for a wise and wholesome purpose, and in case of the latter, the vitality of the law giving the authority can not be destroyed merely by the form in which a resolution is introduced. A resolution, in the sense used in the charter, is nothing more than the formal expression of the will of the city council, and a motion is a proposal made to evoke action upon the part of the council or other assembly. When the motion had been acted upon it became the formal expression of the will, or resolution, of the city council. "A motion is a proposition made to the house by a member, which, if adopted, becomes the resolution, vote, or order of the house." Cush. Law and Prac. Leg. Assem., sec. 1279. In a case, the facts of which are quite similar to the one before us, the Supreme Court of New Jersey said: "Although the word 'resolution' or 'resolved' was not used by the common council in taking this proceeding, it is none the less a proceeding, by whatever name it may be called. The requirement of the charter can not be evaded in a matter of such importance, nor the mayor deprived of his prerogative by a mere change of words, by calling what is resolved to be done a motion, and not a resolution. The

proceeding certified is, in substance and effect, a resolution of the council; and it is void, and must be set aside, because it was not submitted to the mayor for his approval." It may be that the doctrine announced in the Texas case above cited is the law of the State until authoritatively overruled by the Supreme Court, but we have considered it proper to call attention to what we consider the tendency that it will have to defeat the legislative will, although, under our view of this case, an expression of our opinion was not essentially necessary. It is provided in the charter that the approval of the mayor shall be evidenced by his signing the ordinance or resolution, and it is a question of some doubt as to whether the signing of the contract would be a compliance with that provision.

We will view the case, however, as though every formality essential to the execution of the contract had been strictly complied with, and that the mayor had no power or authority to veto the action of the city council, and look to the contract itself to ascertain whether the city is liable thereon or not. It is provided in the contract that appellant shall furnish such lights "as the city may designate," to be "placed at such places as the city of El Paso, through its city council, may direct." To render this contract effective and operative, it was essential that the city should in some way make the designation provided therein, and it is not contended by appellant that it had any vitality or force until there was such designation directly or impliedly by the city council. We think this clear, and that there was a lack of mutuality in the contract until the city council had, in some manner, designated the number of lights and their location. In an Illinois case in which a lumber company had agreed to buy from a coal company "its requirements of anthracite coal for season of 1886-1887," it was held by the court that the word "requirements" in the connection used meant "needs," and that the contract was enforceable, but it said: "If the word 'requirements' as here used is so interpreted as to mean that appellee was only to furnish such coal as appellant should require it to furnish, then it might be said that appellant was not bound to require any coal unless it chose, and that therefore there was a want of mutuality in the contract." Lumber Co. v. Coal Co., 43 N. E. Rep., 774.

In the case of Railway v. Dane, 43 New York, 240, defendant had, by letter, offered to take iron from plaintiff and transport it on specified terms. The latter answered assenting to the proposition. Some time afterward the plaintiff offered iron for transportation, and it was held that because there was no promise to present coal for transportation, there was a lack of mutuality in the contract, and it could not be enforced. This case is cited and approved in Railway v. Scott, 72 Texas, 50.

In the case of Vogel v. Pekoe, 42 Northeastern Reporter, 386, decided by the Supreme Court of Illinois, the contract was as follows: "The said parties of the first part agree to employ the said party of the second part to perform such work as they may assign to him from time

to time, such service to continue only so long as satisfactory to the said parties of the first part." The court said: "We think it is plain that the parties of the first part were not bound under the terms of the contract to employ the party of the second part for a single day or hour, and, if they had absolutely refused to employ him, he was without remedy in any court of the country."

The intention of the parties to be bound by the contract may be presumed, but that should not influence the action of a court in passing upon the validity of the contract. Courts can give effect to the intention of parties only through the words used by them, and can not make a contract for them. Railway v. Bagley (Kan.), 56 Pac. Rep., 759.

It may be said that the words "may designate" and "may direct" are imperative, and require the city council to take such action, but if the contract is so construed, how many lights is it the duty of the city to designate? Shall it be the number that is necessary for the proper lighting of the city, or the number that it had used prior to the making of the contract in question? Suppose appellant, upon refusal of the city council to abide by the contract, had instituted a suit for damages arising from a breach of the contract, upon what basis would they be calculated? What would be the measure of the damages? No number of lights being designated, there would be no measure of damages. "When no breach of a contract could be assigned which could be compensated by any criterion of damages to be furnished by the contract itself, the contract is void for uncertainty." Howard v. Railway (Ala.), 18 So. Rep., 868; Pulliam v. Schimpf (Ala.), 19 So. Rep., 428.

The city council having not only failed to designate the number and location of the lights, but absolutely repudiated the contract, it is not enforceable, unless this court should hold that it can act in lieu of the council and make the designation, or unless the fact that the lights were not forcibly torn down by the city authorities is to be construed into a designation under the contract.

While the contract, if valid, could not be affected by any act of repudiation upon the part of the city (Beach, Modern Law of Contracts, sections 1143, 1144, and notes), still, under the circumstances of this case, the action of the council in repudiating the contract notified appellant not only that appellee had not made a designation under the contract, but that it absolutely refused so to do. We can not accede to the proposition that, because appellee had been using a certain number of lights of appellant, and did not, after February 1, 1899, have the posts removed and the lamps taken down, this constituted a designation. The city having informed appellant that no designation, under the contract, would be made, and the contract failing in case of no designation, appellant can not with any force or merit insist that because the city had once made a designation of a certain number of lights under a former contract, it would be held to such designation under a new contract.

It follows from what has been written that, as the contract was incapable of enforcement, it was not error to cancel it.

The question of quantum meruit does not arise in this suit, the demand being based upon an express contract.

The judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

It is contended in the motion for rehearing that the want of mutuality in the contract had been waived by the action of appellee, and that this court should have discussed the question of waiver. It was not discussed at length, because the court concluded that there was no evidence whatever of waiver. Appellant, before it had performed any service under the contract, was distinctly informed that it had been repudiated. It does not matter what reasons were given for the repudiation, appellant had notice that the contract had been declared off by the city. The conduct of the city council afterward amounted at the most to nothing more than a promise to pay for the time lights had been used. This can not be held to have given new life and vigor to a dead contract. Neither does the agreement of counsel to the effect that appellant had complied with the terms of the written contract give vitality to the contract, for in the agreement it is distinctly provided that the "city has not admitted or recognized the validity or binding effect on it of said contract after the mayor's veto." In the case of Railway v. Robards, 60 Texas, 548, cited by appellant, the contract was not repudiated until after it had been fully performed by appellees, and appellant had received full benefit from it, and it was properly held that the conduct of the appellant amounted to a waiver of the want of mutuality in the contract. No such state of facts appears in this case. The motion for rehearing is overruled.

*Overruled.*

Writ of error refused.