**The CITY OF CLUTE, Texas, Appellant,**

v.

**The CITY OF LAKE JACKSON, Texas, Appellee.**

**No. 1506.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

Oct. 31, 1977.

Rehearing Denied Dec. 21, 1977.

392

W. N. Shaw, City Atty., City of Clute, Freeport, Waggoner Carr, Chris D. Harsdorff, Austin, for appellant.

William S. Olson, Jr., Olson & Olson, Houston, John E. Dewey, City Atty., Lake Jackson, for appellee.

COULSON, Justice.

This is an appeal from a consolidated action in which both the appellant, City of Clute, and the appellee, City of Lake Jackson, sought a declaratory judgment invalidating the ordinances by which the other had annexed certain areas. After a nonjury trial, the district court rendered judgment upholding the validity of the Lake Jackson annexation and declaring all of the Clute annexation ordinances invalid. At the request of Clute, the court filed findings of fact and conclusions of law. We affirm in part and reverse and render in part.

Lake Jackson and Clute are home rule cities situated in Brazoria County. According to the 1970 federal census, Lake Jackson has a population of 13,376 and Clute has a population of 6,023. Clute lies basically east of Lake Jackson; less than one mile separates the two cities.

On July 2, 1960, the City Council of Lake Jackson passed Ordinance No. 248. This ordinance, together with its subsequent amendment, annexed a large tract of land to the west and south of Lake Jackson, plus a strip of land encircling an area occupied by a Dow Chemical Company plant.

The City Council of Clute passed Ordinance No. 309 on October 10, 1968; Ordinance No. 336 on October 23, 1969; Ordinance No. 362 on April 13, 1972; Ordinance No. 375 on November 27, 1972; and Ordinance No. 73–11 on August 9, 1973. Part of the territory annexed by Ordinances No. 309, 362, and 375 lies between the eastern boundary of Lake Jackson and the western boundary of Clute. The remaining ordinances annexed land to the south of Clute.

The City of Clute appeals on seventeen points of error, which relate to four different topics: Lake Jackson's Ordinance No. 248, the effect of two agreements entered into by the cities, and the Clute ordinances. We will discuss each of these matters separately.

LAKE JACKSON ORDINANCE NO. 248

Clute's first two points of error contend the trial court erred in holding that the issue of non-adjacency of the territory annexed by Lake Jackson Ordinance No. 248 was not raised in Clute's pleadings, was not

**394**

tried by consent, and these matters notwithstanding, the territory annexed by No. 248 was at the time of passage of the ordinance, and is now, adjacent to Lake Jackson. While we agree with all the conclusions of the trial court, we need only discuss the issue of adjacency since our holding on that matter obviates discussion of the others.

■ Among the enumerated powers granted to home rule cities is the power to annex adjacent territory. Tex.Rev.Civ. Stat.Ann. art. 1175(2) (1963); *State ex rel. Pan Am. Prod. Co. v. Texas City,* 157 Tex. 450, 452, 303 S.W.2d 780, 781 (1957). The Texas Supreme Court reviewed the law on adjacency in *Fox Dev. Co. v. City of San Antonio,* 468 S.W.2d 338, 339–41 (Tex.Sup. 1971):

> Rules of long standing in our State were reaffirmed in *State ex rel. Pan American Production Co. v. Texas City,* supra. It was there repeated that the only limitation on the power of a city to annex additional territory is that it be adjacent to the city and not included within the boundaries of any other municipality; and "that the Legislature used the term [adjacent] in the sense of being 'contiguous' and 'in the neighborhood of or in the vicinity of,' without reference to the character of the land or the use to which it is put." . . .
>
> *City of Pasadena v. City of Houston,* 442 S.W.2d 325 (Tex.Sup.1969) and *City of Irving v. Dallas County Flood Control District,* 383 S.W.2d 571 (Tex.Sup.1964), upon which petitioner principally relies, are not apposite. The problem in each of these cases was whether the respective territories, which were contiguous to each of the competing Home Rule cities and patently adjacent to the contesting cities, would also be considered adjacent in law to the cities attempting annexation. The holdings were not that there could be no adjacency in the statutory sense as to the annexing cities, *which had lesser contiguity,* but that the other cities had controlling adjacency. *This rested upon the disproportionate touching of the respective*

*city boundaries, and not upon the size, shape or character of the strips of land in question in relation to the cities involved.* [Emphasis added.]

> In the *Pasadena* and *Irving* cases, the territory attempted to be annexed abutted the boundaries of another city over a much greater distance than it abutted the boundaries of the annexing city. None of the territory annexed by Ordinance No. 248 touches the boundaries of Clute as they existed when the ordinance was enacted. There is some evidence in the record that the City of Freeport is adjacent to a portion of the territory annexed, but we are unable to determine the extent of the "touching", if any. We realize that much of the territory annexed is closer to Clute than it is to Lake Jackson, but that is not the test set out in *Fox Development.*

In 1976, the supreme court was urged to re-examine and overrule *Fox Development* in *City of Wichita Falls v. State ex rel. Vogtsberger,* 533 S.W.2d 927, appeal dismissed, 429 U.S. 908, 97 S.Ct. 298, 50 L.Ed.2d 276 (1976). Instead, the court strengthened the holding of *Fox Development*:

> Traditionally, the courts of this State have not scrutinized the purpose of annexation ordinances or the use or character of the occupation of the annexed territory. Nor have our courts prescribed shape limitations. These are legislative prerogatives. . . . Where there is compliance with statutory requirements, as here, the annexation ordinance must stand whether the attack is direct by quo warranto or collateral.

533 S.W.2d at 929, 930.

■ We affirm the trial court's conclusion of law that the territory annexed by Ordinance No. 248 was at the time of passage and is now adjacent to the City of Lake Jackson.

Clute's third and fourth points of error attack the trial court's finding of fact and conclusion of law that the description of the territory annexed by Ordinance No. 248 closes, constitutes a continuous, unbroken line, is sufficient to locate the territory on the

ground, and effectively describes territory contiguous to Lake Jackson. Clute contends that the ordinance omits a call or calls necessary to properly and sufficiently describe a point for a corner. The call in issue reads:

THENCE continuing in a northwesterly direction on a line 10 ft. from and parallel to the corporate limits of the said Village of Lake Barbara said corporate limits being along the north and northeast lines of Tracts No. 551, 553 and 555 all of said Subdivision No. 14, A. Calvit League, Abstract No. 49, to a point for a corner, said corner being on the intersection between the said northeast line of said Tract No. 555 and the proposed southerly right-of-way line of the new location of State Highway No. 332.

Clute bases its contention that the description fails on disputes, extensively developed during the trial, as to the location of Lake Barbara's corporate limits and the effects of changes in the right-of-way line along State Highway 332.

Expert witnesses testified for both parties. Robert Adams, a registered public surveyor licensed by the State of Texas, testified for Clute that the property description in Ordinance No. 248 does not close; David Lawson, a registered engineer licensed by the State of Texas, testified for Lake Jackson that it does.

■ A city annexation ordinance containing a description which does not close is void, and a call cannot be added to such ordinance by showing that the enacting body intended the call to be included. *State ex rel. Rose v. City of La Porte,* 386 S.W.2d 782, 788–89 (Tex.Sup.1965). But that is not the case here. The dispute between the parties does not involve a call that was omitted, but rather the location of physical points referred to in a call. As such, the issue was one of fact.

■ The trial found that Ordinance No. 248 closes. The findings of the trial court are entitled to the same weight and conclusiveness on appeal as is the verdict of a jury. The fact findings will not be disturbed on appeal if there is some evidence

of probative force to support them, viewing the evidence in the light most favorable to the successful party and indulging every legitimate conclusion that is favorable to him. *Mitchell's, Inc. v. Nelms,* 454 S.W.2d 809, 813 (Tex.Civ.App.—Dallas 1970, writ ref'd n. r. e.). The trial court was faced with a difference in opinion by two qualified expert witnesses, and he resolved the issue in favor of Lake Jackson.

■ An ordinance is to be construed in such a manner as to uphold it, if this can reasonably be done. *Town of Port Acres v. City of Port Arthur,* 340 S.W.2d 325, 331 (Tex.Civ.App.—Beaumont 1960, writ ref'd n. r. e.). The interpretation of the call given by Lawson, Lake Jackson's expert, is a reasonable one and it, together with other evidence in the record, amply supports the finding by the trial court that Ordinance No. 248 closes.

We hold that Ordinance No. 248 is valid. Appellant's third and fourth points of error are overruled. In light of our holding on these points, Clute's fifth point of error need not be considered.

## THE 1965 AGREEMENT

■ Clute's sixth point of error asserts the trial court erred in holding that a 1965 agreement between Clute and Lake Jackson

affected only that overlapped extraterritorial jurisdiction North of a line extending from the intersection of the center line of Flag Lake Road and the North right-of-way line of State Highway 332 *to the most Southern point on the most Western line of the corporate limits of the City of Clute* . . . .. [Emphasis added.]

On December 17, 1965, the Cities of Clute, Lake Jackson and Richwood Village (which lies north of Clute and Lake Jackson) entered into a written agreement apportioning the unincorporated areas within the overlapping extraterritorial jurisdiction of these cities in accordance with the provisions of the Municipal Annexation Act, Tex. Rev.Civ.Stat.Ann. art. 970a, § 3B (1963). The area between Clute and Lake Jackson

intended to be apportioned is described in the agreement as follows:

> Between the Cities of Clute and Lake Jackson, Texas, lies a tract of land *east of the City of Lake Jackson, and northeast of that city; such being west of and northwest of the City of Clute* as their corporate boundary lines exist as of the date of this Agreement. [Emphasis added.]

The question involved here is where the southern boundary line of the territory apportioned Clute lies. There is agreement as to the location of the line's western terminus, but dispute as to its eastern terminus. The trial court concluded that it is the southernmost western city limit line of the City of Clute, while Clute contends it is simply the westernmost limit.

While the termination point suggested by Clute would effectively apportion territory to the east and northeast of Lake Jackson, it would extend the agreement to more than just the territory to the west and northwest of Clute. Much of the territory would lie to the south of Clute. Notwithstanding some evidence to the contrary, we believe the clear intention of the parties is reflected in the trial court's conclusion.

Appellant's sixth point of error is overruled.

### THE 1970 AGREEMENT

The trial court found that the Cities of Clute and Lake Jackson did not, on January 15, 1970, enter into an agreement in writing, approved by an ordinance or resolution adopted by the city councils, to apportion an area of overlapped extraterritorial jurisdiction. The court held that cities may voluntarily apportion overlapped extraterritorial jurisdiction only by mutual written agreement of the governing bodies of such cities, approved by an ordinance or resolution adopted by such governing bodies. Clute's seventh and eighth points of error attack this finding of fact and conclusion of law.

Section 3(B) of the Municipal Annexation Act provides in pertinent part:

> B. In the event that on the effective date of this Act the area under the extraterritorial jurisdiction of a city overlaps an area under the extraterritorial jurisdiction of one or more other cities, such overlapped area may be apportioned by mutual agreement of the governing bodies of the cities concerned. *Such agreement shall be in writing and shall be approved by an ordinance or resolution adopted by such governing bodies.* [Emphasis added.]

Clute contends that the following letter is a written agreement between the two cities to apportion overlapped extraterritorial jurisdiction:

> TO WHOM IT MAY CONCERN:
>
> This is to advise that by verbal agreement between the Mayors and City Councils of the Cities of Lake Jackson and Clute it has been mutually agreed that along State Highway 332, between Flag Lake Road and State Highway 288, the jurisdictional line separating the two cities will be along the South Right-of-Way Line of State Highway 332.
>
> > /s/ Jack Reid
> > Jack Reid, Mayor
> > City of Lake Jackson, Texas.
> >
> > /s/ Bruce Runnels
> > Bruce Runnels, Mayor
> > City of Clute, Texas

January 15, 1970

On February 12, 1970, the City Council of Clute, by motion, unanimously authorized Mayor Runnels to sign the letter. The entire text of the letter was read verbatim into the minutes of the council meeting. On February 16, 1970, the City Council of Lake Jackson, by motion, unanimously authorized Mayor Reid to sign the letter. Although the entire letter is not reproduced in the minutes, the operative terms of the agreement are set out:

> It was previously agreed that along State Highway 332, between Flag Lake Road and State Highway 288, the jurisdiction line separating the two cities will be along the south right-of-way line of State Highway 332.

Lake Jackson contends that this letter is not an agreement in writing and was not approved by an ordinance or resolution adopted by the governing body of either Lake Jackson or Clute. We disagree. The letter is brief and informal, but clearly and concisely provides that Lake Jackson is relinquishing all jurisdiction (necessarily including extraterritorial jurisdiction) north of the south right-of-way line of State Highway 332, between Flag Lake Road and State Highway 288, to the City of Clute. By comparison, the 1965 agreement, with its long and laborious metes and bounds description of the territory included therein, is so vague and confusing that the mayors, city councils, attorneys and courts involved in this litigation have spent ten years attempting to decipher and abide by it. It may well be that the 1970 agreement was the result of an effort by the mayors of the two cities to clarify the 1965 agreement. It is also evidence that, in 1970, Clute recognized the validity of Lake Jackson Ordinance No. 248; Lake Jackson would have no extraterritorial jurisdiction in the area but for the annexation by Ordinance No. 248.

Lake Jackson does not contend, and the trial court did not find, that the cities did not enter into the 1970 agreement. The contention is that no formal resolution or ordinance was passed by either council. More specifically, the approval of the agreement by Lake Jackson did not comply with its charter requirement relating to the printing and recording of resolutions.

Surely the legislature in drafting the Municipal Annexation Act did not intend that its provisions be subject to the vicissitudes of the hundreds of city charters in force across the state. Our task is to construe the provisions of a state statute, and we are not concerned with whether the cities involved complied with the technicalities of their city charters.

The Act permits cities to adopt such agreements by resolution. The distinction between legislative enactments, such as statutes and ordinances, and resolutions has long been recognized in this state.

Tex.Const. art. III, § 34; *City of San Antonio v. Micklejohn,* 89 Tex. 79, 33 S.W. 735 (1895); *State v. Delesdenier,* 7 Tex. 76 (1851); *McCarthy v. McElvaney,* 182 S.W. 1181 (Tex.Civ.App.—Dallas 1916, writ ref'd); *Conley v. Texas Div. of United Daughters of Confederacy,* 164 S.W. 24 (Tex.Civ.App.—Austin 1913, writ ref'd).

A resolution has been defined as "[a]n expression of the opinion or mind of a municipal council concerning some matter of administration and providing for the disposition thereof, being less formal than an ordinance and requiring no set form of words." Ballentine's Law Dictionary (3d ed. 1969); *McCarthy v. McElvaney,* 182 S.W. at 1183. "The term is usually employed to denote the adoption of a motion. . . ." Black's Law Dictionary (rev. 4th ed. 1968).

It was held in *El Paso Gas, Electric Light & Power Co. v. City of El Paso,* 22 Tex.Civ. App. 309, 312, 54 S.W. 798, 799 (1899, writ ref'd):

> A "resolution," in the sense used in the charter, is nothing more than the formal expression of the will of the city council, and a "motion" is a proposal made to evoke action upon the part of the council or other assembly. When the motion had been acted upon, it became the formal expression of the will, or resolution, of the city council.

We hold that the approval and adoption of the 1970 agreement by the city councils of Clute and Lake Jackson was in substantial compliance with the requirements of the Municipal Annexation Act. We note that the 1970 agreement was prepared by Lake Jackson Mayor Reid, and Lake Jackson does not challenge the 1965 agreement even though it was adopted by Clute by motion. We should not be understood as condoning the degree of informality with which this agreement was approved. But neither should we allow Lake Jackson's failure to comply with its own charter to defeat the obvious intent of the parties. Moreover, we believe that by enacting the Municipal Annexation Act, the

legislature intended to foster voluntary agreements between adjacent cities as to overlapped extraterritorial jurisdiction. A liberal construction of such agreements is in the public interest and furthers one of the purposes of the Act. Clute's eighth point of error is sustained; its seventh point is overruled.

## THE CLUTE ORDINANCES

Several findings of fact and conclusions of law of the trial court are affected by our interpretation of the 1965 agreement and validation of the 1970 agreement. All of Clute's ordinances were enacted between 1968 and 1973, and at least a portion of the territory annexed by each of the ordinances was outside of the extraterritorial jurisdiction of Clute, as that jurisdiction existed after the 1965 agreement. After the effective date of the 1970 agreement, however, all of the ordinances annexed territory within the exclusive extraterritorial jurisdiction (either by statute or apportionment) of Clute. Therefore, only those ordinances enacted between 1965 and 1970 annexed territory within the exclusive or overlapped extraterritorial jurisdiction of Lake Jackson, i. e., Ordinances No. 309 (1968) and No. 336 (1969). Since "a city may annex territory only within the confines of its extraterritorial jurisdiction . . .", Tex.Rev. Civ.Stat.Ann. art. 970a § 7(A) (1963), Ordinances No. 309 and 336 violate the Municipal Annexation Act and cannot stand.

The record clearly establishes that because of substantive and procedural defects in the enactment of the Clute ordinances, none of them were valid when passed. This was essentially the finding of the trial court. Nevertheless, the legislature has the power to validate an otherwise void annexation ordinance. *State ex rel. Armstrong v. City of Gladewater,* 242 S.W.2d 650, 652 (Tex.Civ.App.—Texarkana 1951, writ ref'd). Clute contends that its ordinances were validated by Tex.Rev.Civ. Stat.Ann. arts. 974d–19, 974d–20, 974d–21 (Supp.1976–77).

Article 974d–20 refers to consolidation proceedings and has no bearing on this case. Articles 974d–19 and 974d–21 are effective to validate Clute Ordinances No. 362, 375, and 73–11. Those validation statutes cannot save Ordinances No. 309 and 336 since both statutes expressly provide that a boundary line extended by annexation into the extraterritorial jurisdiction of another city is not validated.

The trial court's findings of fact that all of the Clute ordinances annexed territory within the extraterritorial jurisdiction of Lake Jackson were based on its conclusion that the 1970 agreement was a nullity. Our conclusion as to the 1970 agreement is to the contrary. Hence, appellant's ninth, tenth, eleventh, and twelfth points of error, to the extent that those points pertain to the validity of Ordinances No. 362, 375, and 73–11, are sustained. We need not consider points thirteen through seventeen.

In summation, we hold:

(1) Lake Jackson Ordinance No. 248 is valid.

(2) Clute Ordinances No. 362, 375, and 73–11 are valid.

(3) Clute Ordinances No. 309 and 336 are void.

(4) The City of Clute has exclusive extraterritorial jurisdiction over that territory north of the south right-of-way line of State Highway 332 between Flag Lake Road and State Highway 288, including the territory it attempted to annex in Ordinances No. 309 and 336.

The judgment of the trial court is affirmed in part; reversed and rendered in part. Costs are taxed one-half against appellant and one-half against appellee.