Opinion issued December 13, 2007














Opinion
issued December 13, 2007

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 

 

NO. 01-05-01022-CV

 

 

WASIM AHMED SHEIKH, Appellant

 

V.

 

SHAMA SHEIKH, Appellee

 

On Appeal from 311th District Court

Harris County, Texas

Trial Court Cause No. 2004-02532

 

 

O P I N I O N

 

 

Appellant, Wasim Ahmed Sheikh (AWasim@), appeals from a
turnover-and-receivership order entered after a decree of divorce dissolving
the marriage between himself and appellee, Shama
Sheikh (AShama@).  We
determine whether the trial court had subject-matter jurisdiction to enter, or
alternatively abused its discretion by entering, a turnover-and-receivership
order that had the effect of enforcing the decree=s property
division while Wasim=s appeal of the
underlying divorce decree was pending.  We also determine whether we have
jurisdiction, in this appeal, to consider Wasim=s challenges to
the portion of the order appointing the receiver as master in chancery. 
We reverse turnover-and-receivership portions of the order and remand the
cause.

Background

Wasim and Shama married in March 1985. A final divorce decree was rendered in December 2004, but on March 9, 2005, the
trial court vacated the December 2004 decree and rendered a new final
decree.  In its March 2005 final decree, the trial court, among other
things, (1) divided the marital estate disproportionately; (2) awarded Shama an owelty judgment of
$632,000 to equalize the property division; and (3) awarded Shama
$330,000 in actual damages against Wasim on her
claims of assault and actual fraud against her personally.  Because Wasim had filed his notice of appeal on March 1, 2005, it
was deemed filed on March 9, 2005, the date of the new
final decree.  See Tex. R. App. P. 27.1(a). 
Wasim did not supersede the final decree.

 

 

On March 4, 2005Cbefore the March 9
decree was rendered and while the December 4 decree
was still in effectCShama filed a motion to
enforce the property division.  On March 10, 2005, Wasim
moved the trial court to abate the enforcement proceeding because he had
perfected his appeal.  See Tex.
Fam. Code Ann. ' 9.007(c) (Vernon 2006) (AThe power of the
court to render further orders to assist in the implementation of or to clarify
the property division is abated while an appellate proceeding is pending.@).  Wasim
asserts in his brief, Shama does not contest in her
brief, and a docket-sheet entry indicates that the trial court verbally granted
Wasim=s plea in abatement on April 26,
2005.  

 

On May 9, 2005,
during the pendency of the divorce appeal, Shama
filed an application for post-judgment turnover and appointment of
receiver.  The application also requested that the receiver be appointed as master in chancery under Texas Rule of Civil
Procedure 171.  See Tex. R.
Civ. P. 171.  The turnover application identified Wasim=s property only in broad categories, not
specifically.  Wasim specially excepted and filed an opposition to the turnover
application.  His special exception asserted that the application was
defective for failing to identify property or the basis for relief sufficiently
for him to defend against or to respond to the application.  His opposition alleged, among other things, that (1) Family Code
section 9.007(c) prohibited the requested relief because he held no non-exempt
assets except for those awarded to Shama in the
decree; (2) Athe proposed
[turnover-and-receivership] order exceeds the Application and authorizes the
receiver to take actions which are not authorized by the turnover procedure,
which are not supported by any other legal authority . . . , and
which are unconstitutional@; and (3) the request to
appoint the same person as receiver and master in chancery was inappropriate
because Ait would allow the party
seeking the information to rule on his right to obtain that information.@

On July 18, 2005,
after an evidentiary hearing at which the only evidence presented was Shama=s testimony, the trial court granted the
application for turnover and receivership.  The receiver was given broad powers to take possession of and to sell all
non-exempt property held by Wasim.  The order
further provided:

3.      
. . . Receiver is authorized to take all
actions necessary to order [Wasim] to exhaust all
lines of credit, including credit cards, to satisfy any amount due in this
matter.  Receiver is further authorized to hire,
at his discretion, independent counsel for any purpose receiver deems necessary
to aid in collection of the judgment and related costs.  All expenses
incurred by receiver for independent counsel shall be taxed
as costs against [Wasim].

 

4.      
Receiver is hereby authorized to take all action
necessary to gain access to all real property, leased premises, storage
facilities, and safety deposit boxes wherein any real and/or personal property
of [Wasim] may be situated.

 

. . .

 

7.      
The Receiver is also appointed to Master in Chancery under Rule 171 of the
Texas Rules of Civil Procedure and shall have and exercise the fullest and
broadest powers under Rule 171 . . . .

 

 

 

8.      
[Wasim] shall make a full and complete disclosure to
Receiver of all of his non-exempt assets and to neither directly nor indirectly
interfere or impede Receiver in his performance of his duties under this Order.

 

. . .

 

10.     It is
further ORDERED that [Shama] have and recover of and
against [Wasim] judgment in the sum of $500.00 for
additional attorney=s fees incurred in the preparation,
filing, and processing of this turnover order.

 

. . .

 

12.     [Wasim] is ORDERED to execute and turn over and deliver to Receiver . . . Internal Revenue Service Form 2848CPower of Attorney and Declaration
of Representative.  Receiver is specifically authorized to execute Form
2848 if [Wasim] fails to deliver Form 2848 as Ordered
and Receiver is further authorized . . . to receive and endorse any
tax refund checks to [Wasim] and request copies of [Wasim=s] . . . tax returns.

 

13.    
It is Ordered that Receiver is Directed and Authorized to pay himself as
Receiver=s fees, an amount equal to 25% of
all proceeds coming into his possession, the possession of [Shama],
and/or the registry of the court; which the Court finds is a fair, reasonable
and necessary fee for the Receiver; and to distribute all remaining proceeds to
the attorney for [Shama], as Trustee, without the
requirement of an Order therefor.  Receiver shall have full and final
authority to tax as costs against [Wasim] any
expenses incurred by [R]eceiver and/or Shama in furtherance of any purpose of the
receivership.  All costs, including Receiver=s fees, are hereby taxed as costs against [Wasim].

 

14.     All
fees of Receiver shall, after application for advance is made
by Receiver in writing with notice to all parties and an opportunity to
respond, be taxed at regular intervals established by the Court, as costs owed
by [Wasim].

 

15.    
Receiver is Ordered to post bond in the amount of $100.00 . . . .

 

Wasim moved for a new
trial on the turnover-and-receivership order, which motion was
overruled by operation of law.  Additionally, Wasim
timely requested findings of fact and conclusions of law and
also timely filed notice of past-due findings and conclusions.  He
also appealed the turnover-and-receivership order.[1] 
On February 1, 2006, this Court abated the appeal and remanded the cause for
the trial court to enter findings of fact and conclusions of law concerning the
turnover-and-receivership order.  On February 2, 2006, the trial court=s findings of fact
and conclusions of law concerning the turnover-and-receivership order were
filed in this Court, and the appeal was reinstated.  Wasim
objected to those findings and conclusions and timely requested amended and
additional findings and conclusions.   See Tex. R. Civ. P. 298.  The trial
court did not file amended or additional findings of fact or conclusions of
law.[2]


Standards of
Review

A.      Standards of Review for Orders of
Turnover and Receivership

 

We review a
turnover order and an appointment of a receiver for an abuse of
discretion.  Beaumont Bank, N.A. v. Buller,
806 S.W.2d 223, 226 (Tex. 1991) (providing
that abuse of discretion is standard for turnover order);
Moyer v. Moyer, 183 S.W.3d 48, 51 (Tex .App.CAustin
2005, no pet.) (providing that abuse of discretion is
standard for both turnover and receivership orders).  We reverse a trial
court for abusing its discretion only if we find that the court acted in an
unreasonable or arbitrary manner.  Buller,
806 S.W.2d at 226.  That is, an abuse of
discretion occurs when a trial court acts A>without reference
to any guiding rules or principles.=@  Id. (quoting
Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241B42 (Tex. 1985)).  A trial
court=s issuance of a
turnover order, even if predicated on an erroneous conclusion of law, will not
be reversed for an abuse of discretion if the judgment is otherwise sustainable
for any reason.  Id. 
Wasim phrases some of his challenges to the turnover-and-receivership
order as legal- and factual-sufficiency challenges.  However, whether
there is no evidence to support a turnover order is only Aa relevant
consideration in determining if the trial court abused its discretionary
authority in issuing the order.@  Id.

B.      Standards of Review for Findings of
Fact and Conclusions of Law

 

Findings of fact
in a case tried to the court have the same force and dignity as a jury=s verdict upon
jury questions. See City of Clute v. City of Lake Jackson,
559 S.W.2d 391, 395 (Tex. Civ. App.CHouston
[14th Dist.] 1977, writ ref=d n.r.e.). 
The trial court=s findings of fact are not conclusive
when, as here, a complete reporter=s record appears
in the appellate record. See Middleton v. Kawasaki Steel Corp., 687 S.W.2d
42, 44 (Tex. App.CHouston [14th Dist.]
1985), writ ref=d n.r.e., 699 S.W.2d 199 (Tex. 1985).  The
trial court=s findings of fact are reviewable for legal- and
factual-sufficiency of the evidence using the same standards that are applied
in reviewing the sufficiency of the evidence underlying jury findings.[3] 
Vannerson v. Vannerson, 857 S.W.2d 659, 667
(Tex. App.CHouston [1st Dist.]
1993, writ denied).  In contrast, we review conclusions of law de
novo.  See BMC Software Belgium, N.V. v. Marchand,
83 S.W.3d 789, 794 (Tex.
2002).  

Wasim=s Complaints Concerning the Trial
Court=s

Jurisdiction to Enter the
Turnover-and-Receivership Order

 

In his first issue,
Wasim argues that the trial court lacked
subject-matter jurisdiction to enter the turnover-and-receivership order
because Texas Family Code section 9.007(c) deprived the court of power to enter
such an order during the pendency of his appeal from the divorce decree.  See
Tex. Fam. Code
Ann. ' 9.007(c).

A.      The Law

 

A
trial court is generally authorized to enforce the property division of its
divorce decree: AExcept as provided by
this subchapter and by the Texas Rules of Civil Procedure, the court may render
further orders to enforce the division of property made in the decree of
divorce or annulment to assist in the implementation of or to clarify the prior
order.@  Tex. Fam. Code Ann. ' 9.006(a)
(Vernon 2006).  This authority is not without limitation,
however:

' 9.007.  Limitation
of Power of Court to Enforce

. . .

(c)     The power
of the court to render further orders to assist in the implementation of
or to clarify the property division is abated
while an appellate proceeding is pending.

 

Tex. Fam. Code Ann. ' 9.007(c) (emphasis added). 
This section deprives the trial court of subject-matter jurisdiction to enter
the specified orders during the pendency of an appeal.  See Gainous
v. Gainous, 219 S.W.3d 97, 107B08 (Tex. App.CHouston [1st Dist.] 2006, pet. filed)
(stating that Family Code section 9.007(b)=s
use of term Abeyond the power of the
divorce court@ indicated that court lacked jurisdiction to enter
referenced order).

 

Section 9.007(c) Ais directed at the power
of the court, not the obligations and responsibilities of the parties.@  English
v. English, 44 S.W.3d 102, 106 (Tex. App.CHouston
[14th Dist.] 2001, no pet.).  Specifically, Athe trial court is
prohibited from implementing and clarifying the property division by way of
further order.@  Id.; accord In re Fischer-Stoker,
174 S.W.3d 268, 272 (Tex. App.CHouston [1st Dist.]
2005, orig. proceeding).  Because it is directed solely at the court=s power, rather
than at the parties= obligations, acts, or responsibilities,
section 9.007(c) Adoes not stay,
supersede or otherwise inhibit the finality of the [divorce] decree, absent a supersedeas bond.@  English,
44 S.W.3d at 106.  Put another way, Aneither the parties[=] [compliance] nor
the ministerial act of execution of the judgment are proscribed.@  Id.;
accord In re Fischer-Stoker, 174 S.W.3d at 272; see Tex. R. Civ. P. 621 (AThe judgments of the
district, county, and justice courts shall be enforced by execution or other
appropriate process.@); Tex. R. Civ. P. 622 (AAn execution is a
process of the court from which it is issued.@). 


Prohibited orders Aassist[ing] in the implementation of@ the decree=s property
division encompass orders to enforce the property division that go beyond the
ministerial act of execution.  See In re
Fischer-Stoker, 174 S.W.3d at 272 (holding that post-decree contempt motion
impermissibly sought kind of enforcement relief that section 9.007(c)
prohibited).  A turnover order is a species of post-judgment
enforcement order.  See Ex parte Johnson, 654 S.W.2d 415, 417 (Tex. 1983) (noting
that predecessor to current turnover statute Ais a post‑judgment
relief statute designed to assist judgment creditors in securing satisfaction
of a final judgment.@); Sloan v. Douglass,
713 S.W.2d 436, 441 (Tex. App.CFort Worth 1986, writ
ref=d n.r.e.) (ATurnover is obviously an
aid to judgment creditors in obtaining satisfaction on debts.@). 
It is the type of enforcement order that goes beyond the
ministerial act of execution.

B.     
Pertinent Findings of Fact, Conclusions of Law, and Provisions of the Divorce
Decree and the Turnover-and-Receivership Order

 

 

The divorce decree
awarded to Shama, among other things, (1) eight
specific checking, savings, and money-market accounts; (2) the businesses and assets of Sheikh &
Sheikh Investments, Inc. and Al-Karim International,
Inc.;[4]
(3) two vehicles; and (4) a house and its contents.  The
turnover-and-receivership order granted the receiver the authority to take
possession of and to sell Aall non-exempt property of [Wasim], that is in the actual or constructive possession or
control of [Wasim],@ such as (1) Aall property incidental to or associated
with the daily business of [Wasim],@ including but not limited to cash,
accounts and notes receivable, monies, financial accounts, real property, and
vehicle titles; (2) all safety deposit boxes and their contents; and (3) Aany and all furniture, fixtures,
equipment, supplies and inventory@ related to any property described in
the order.

 

On the one hand,
the turnover-and-receivership order contained recitations consistent with its having been entered to enforce the $330,000 monetary award
to Shama, rather than the property division.  For example, the order recited that it was Afor
the satisfaction of the judgment@ rendered in Shama=s favor and authorized the
receiver to pay the proceeds that he received to Shama
Ato the extent required to satisfy the
judgment, but not to exceed the full amount awarded under the judgment,
which amount includes principal, interest, attorney=s fees,
court costs, post-judgment interest, post-judgment attorney=s
fees, court costs, and Receiver fees taxed as court costs.@ 
(Emphasis added.)  Likewise, the court=s
findings of fact recited that (1) A[t]he Court found that [Wasim] owes [Shama] monetary
damages of $33,000.00@; (2) A[Wasim] had not voluntarily paid any money owed [Shama] in satisfaction of the Court=s Money
Judgment@; (3) A[a]t the time the Court granted
the Application for Turnover and Appointment of Receiver, [Wasim]
owed [Shama] $330,000.00 in satisfaction of the
money judgment@; and (4) A[t]he Receiver was appointed to
assist . . . Shama . . . in the
collection of the money judgment.@  (Emphasis added.) 
In its conclusions of law, the trial court concluded that it could issue orders
Ato assist in the collection or
enforcement of its money judgments.@ 
(Emphasis added.)  

Nonetheless, the
court=s findings of fact
also recited that A[a]t the time that the Court granted Wife=s Application for
Turnover and Appointment of Receiver, [Wasim] had not
satisfied the division of property contained in the Divorce Decree.@  (Emphasis added.)  And the turnover-and-receivership order authorized the
receiver to take possession and to dispose of every asset in Wasim=s possession, which would necessarily
include any property in his possession that had been awarded to Shama in the divorce decree.

C.      Discussion

 

The final decree
of divorce was rendered on March 9, 2005.  Wasim=s notice of appeal of that decree, which
had been filed on March 1, 2005, became effective the day that the final decree
was rendered.  See Tex. R. App. P. 27.1(a). 
That date preceded the date on which the turnover-and-receivership
order was entered, which was July 18, 2005.  Accordingly, if the only
thing that the turnover-and-receivership order assisted in implementing was the
divorce decree=s property division, then the order would be void for
having been rendered at a time when the trial court=s subject-matter
jurisdiction to enter such an order was abated.  See Hong Kong Dev.,
Inc. v. Nguyen, 229 S.W.3d 415, 439 (Tex.
App.CHouston [1st Dist.] 2007, no pet.) (AAn order is void
[if], among other things, . . . the trial
court lacks subject‑matter jurisdiction to render it.@).

But the
turnover-and-receivership order did not assist in implementing only the decree=s property
division.  This is because the divorce decree itself not only divided
property, but also awarded a money judgment of $330,000.  Because Wasim failed to supersede the divorce decree, the trial
court had jurisdiction to enter the turnover-and-receivership order
because that order enforced the decree=s monetary
award.  Nonetheless, the turnover-and-receivership order
was written so broadly that it also had the erroneous effect of
authorizing the receiver to take possession and to dispose of every asset in Wasim=s possession, which, based on Shama=s pleadings and the evidence
offered at the hearing, would necessarily include some of the property that the
divorce decree awarded to Shama that was still in Wasim=s possession.  

 

 

For
example, in her response to Wasim=s motion for
continuance concerning her turnover-and-receivership application, and in
addition to reciting that the receivership was intended to collect on the
decree=s money judgment, Shama recited that A[t]he Receivership
is for purposes of obtaining possession of assets which this Court has already
awarded [Shama]@ and that Wasim Ahas made statement to
[Shama] that [he] will never . . . deliver
the assets to [her] which were awarded by this Court@ in the divorce
decree.  Likewise, in her supplemental brief
submitted at the trial court=s request after the hearing on
her application, Shama=s counsel asserted that Ashould the court decide that a specific list
of [Wasim=s non-exempt] property is
required despite the recently amended [turnover] statute, attached is a list of
known property owned by [Wasim].@ 
The attached, verified list of property included much of the property awarded
to Shama in the divorce decree, including the eight
checking, savings, and money-market accounts; the house and its contents; the
two vehicles; and stocks in, property interests of, and assets of Sheikh &
Sheikh Investments, Inc. and Al-Karim International,
Inc.  In that same pleading, Shama
argued: 

Opposing counsel may argue that
some of the listed property in Exhibit B may not be subject to the Receivership
because the court awarded the property to Shama Sheikh,
and therefore, the Receiver cannot seize [Shama=s] own property to satisfy the
judgment.  However, until the property awarded to Shama
Sheikh is actually turned over by [Wasim]
to her, she does not own the property.  In Shama
Sheikh=s opinion (and the opinion of the
financial institutions holding [Wasim=s] bank accounts), the court order
[sic; should be Adecree@] does not confer ownership, just the right to
ownership.  Therefore, the property may be seized by the
Receiver.

 

Likewise, at the
hearing on the turnover-and-receivership application, Shama
indicated that the receivership=s purpose was to Aseize the property that=s already been
specifically enumerated in the [divorce] Decree,@
as well as to collect on the $330,000 tort judgment.  Similarly, Shama, whose testimony constituted the sole evidence
presented at the hearing, testified as follows:

Counsel:    
Mrs. Sheikh, have you received any of the assets that have
been awarded to you in the final Decree of Divorce in this matter?

 

Shama:      
No.

 

Counsel:    
Have you made any attempt to collect or gather those
assets that were awarded to you in the Decree?

 

Shama:      
Yes.

 

Counsel:    
And there were financial accounts that were awarded to you that were separate
and apart from [Wasim=s] medical practice and financial accounts in the
medical practice.  You realize that?

 

Shama:      
Yes.

 

. . .

 

Counsel:    
All right. 
Just the financial accounts that were awarded to you,
did you attempt to present to the financial institutions a copy of the Decree
showing that they were awarded to you?

 

Shama:      
Yes.

 

Counsel:    
And were they turned over to you as a result of that?

 

Shama:      
No.

 

. . .

 

Counsel:    
And to this day have you received any of the financial accounts under [Wasim=s] control that were awarded to you
that are not a part of his medical practice?

 

Shama:      
No.

 

. . .

 

Counsel:    
Have youCHas [sic] any of the
accounts that [Wasim] is also a signatory on that
were not a part of this medical practice but that were awarded to you, has he
voluntarily turned over any of those accounts to you?

 

Shama:      
No.

 

Counsel:    
Okay. 
Have you asked him to turn over those accounts to you?

 

Shama:      
Yes.

 

Counsel:     As
it relates to the real property that was awarded to
you, that is the homestead and the building, the professional building, has he
cooperated in turning those over to you?

 

Shama:      
No.

 

. . .

 

Counsel:     Are
you asking the Court to appoint a receiver to take charge of non-exempt assets
so that the transfer can be made to you of those
assets to give you some cash flow that you enjoyed and received during the
pendency of the divorce?

 

Shama:      
Yes.

 

. . .

 

 

Counsel:    
Was it your intent to rely on the assets and financial accounts set aside to
you as a result of the Decree of Divorce?

 

Shama:      
Yes.  

 

(Emphasis
added.)  Shama then testified generally that Wasim was
still conducting emergency-room work; that he still had his medical practice;
that prior to the divorce, Wasim had generally been
earning about $25,000 gross per month from his emergency-room work; that she
did not know where Wasim=s
earnings were currently being spent; that he was living in the building in
which his clinic was located; and that she did not know if he was driving a new
car, buying a house, or Adoing anything of that
nature that=s visible@ to her.

 

It is clear from Shama=s pleadings and the parties= discussions at
the turnover-and-receivership hearing, and from the evidence adduced at that
hearing, that at least part of what Shama sought by
her application was the turnover of property that had been awarded to her in
the divorce decree.  Likewise, although it did not list specific property
that was awarded to Shama in the decree, the
turnover-and-receivership order was broad enough to encompass the assets
awarded to Shama that were still in Wasim=s possession, and
it did not expressly exclude such items.  The only evidence from the
hearing of Wasim=s assets other
than those awarded to Shama in the decree was Shama=s testimony of his monthly earnings; she
did not testify to any other property that was not also awarded to her in the
decree.  And the verified list of Wasim=s assets that Shama attached to her pleadings before the hearingCassuming for purposes of
argument that the court considered this list, despite its not so stating and
despite the exhibit=s not having been admitted into evidenceCin very large part
overlapped with the assets awarded to Shama in the
decree.

Based on these
circumstances, we hold as follows.  Because it had jurisdiction to enforce
the unsuperseded monetary judgment against Wasim, the trial court had subject-matter jurisdiction to
enter the turnover-and-receivership order.  However, to the extent that
the turnover-and-receivership order allowed the receiver to take and to dispose
of the property awarded to Shama and still in Wasim=s possession, the order violated section
9.007(c).  See Tex. Fam. Code Ann. ' 9.007(c). 
It was thus an abuse of discretion, under the evidence and pleadings in this
case, not to limit the receiver=s authority to prevent his implementing
the appealed divorce decree=s property division during the pendency of
the appeal.[5] 
See id.; see also English, 44 S.W.3d at 106; In re
Fischer-Stoker, 174 S.W.3d at 272. 

 

We overrule Wasim=s issue one to the extent that he argues
that the trial court lacked subject-matter jurisdiction to enter the turnover-and-receivership
order.  However, at the heart of issue one is the complaint that the trial
court erred in drafting a turnover-and-receivership order that was so broad as
to allow implementation of the property division pending an appeal of the underlying
divorce decree.  We are required liberally to construe appellate
briefing.  See Tex. R. App. P. 38.1(e), 38.9; Sterner
v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989). 
Accordingly, we construe Wasim=s issue one also
to encompass a complaint that the trial court abused its discretion in
rendering a turnover-and-receivership order that had the prohibited effect of
allowing implementation of the appealed divorce decree=s property
division.  As so construed, issue one is sustained.

Wasim=s Remaining Complaints Concerning
the

Turnover-and-Receivership
Provisions of the Order

 

 

Because
our sustaining issue one requires reversal of the order and remand of the
cause, we decline to consider Wasim=s issues two,
three, and four, in which he contends that (1) the trial court=s
turnover-and-receivership order violated the turnover statute and was
unconstitutional for giving the receiver powers that were not requested and
that are not authorized by law; (2) the turnover order failed because the court
did not make findings that Wasim possessed non-exempt
property that could not be readily attached or levied by ordinary legal
process, and such findings could not be deemed because Wasim
requested additional findings on these elements, on which request the court did
not rule; and (3) alternatively, the trial court abused its discretion in
entering the order because the evidence did not support any such findings, if
they could be deemed.  The trial court may, upon remand, also revisit these
challenges, which Wasim raised here and below.  We thus
decline to exercise our discretion to consider them.  We also decline to reach Wasim=s issue six, which challenges the
constitutionality (facial and as applied) of the turnover statute depending
upon its statutory interpretation: courts generally do not reach issues of
statutory constitutionality unless required for the appeal=s disposition.  See In re
B.L.D., 113 S.W.3d 340, 349 (Tex.
2003) (AAs a rule, we only decide constitutional questions when we cannot resolve
issues on nonconstitutional grounds.@). 

Wasim=s Remaining Complaints Concerning
the

Master-in-Chancery Provision of the
Order

 

In issue five, Wasim argues that the trial court abused its discretion by
appointing a master in chancery within its turnover-and-receivership order
because (1) no extraordinary circumstances justified a master=s appointment and
(2) an inherent conflict existed in appointing the same person to be both the
receiver and the master in chancery.  

Shama argues that we
lack jurisdiction to consider this portion of the order.  At least one
court of appeals has held thatCunlike a post-judgment
turnover order, which is generally considered final and
appealable[6]Ca post-judgment
order appointing a master in chancery is not final and appealable.

 

 

The only court
expressly considering whether appellate jurisdiction lies over  a
post-judgment order appointing a master in chancery has held that it does not,
even when that order was embedded within a turnover-and-receivership
order.  See Moyer, 183 S.W.3d at 58. 
The Moyer court reasoned that a post-judgment master-in-chancery order
is not final and appealable because Rule of Civil Procedure 171, which
authorizes the order=s entry, requires further action by the
court; a master-in-chancery order is, therefore, not final in the sense that it
can be appealed.  Id.;
see Tex. R. Civ. P. 171
(requiring, among other things, that master in chancery file master=s report and that
court then confirm, modify, correct, reject, reverse, or recommit master=s report). 
In contrast, other courts have assumed, without discussion,
that they had jurisdiction to consider a post-judgment order appointing
a master in chancery that was coupled with a turnover-and-receivership
order.  See Roebuck v. Horn, 74 S.W.3d
160, 165 (Tex.
App.CBeaumont 2002, no pet.)
(assuming that appellate jurisdiction lay over master-in-chancery provision of
post-judgment turnover-and-receivership order, though, in light of remand,
declining to reach issues concerning master in chancery=s appointment); Lannie v. Harvey, No. 14-02‑01326‑CV,
2004 WL 1171720, at *2 (Tex. App.CHouston
[14th Dist.] May 27, 2004, no pet.) (memo. op.) (assuming without discussion that appellate court
had jurisdiction to consider whether post-judgment order appointing same person
as receiver and master in chancery was void for having been entered during
automatic bankruptcy stay); Christensen v. Christensen, No. 04-03‑00095‑CV,
2003 WL 22897120, at *1 (Tex. App.CSan
Antonio Dec. 10, 2003, pet. denied) (memo. op.) (considering appeal of
post-judgment order appointing master in chancery for limited purpose of acting
as applicant=s ex-husband=s attorney in fact
to sign deed assigning his interest in property to applicant); Gore v.
Scotland Golf, Inc., No. 04-03‑00143‑CV, 2003 WL 22238916, at
*4 (Tex. App.CSan Antonio Oct. 1,
2003, no pet.) (memo. op.) (considering
post-judgment turnover order appointing same person as both receiver and master
in chancery).

 

This Court
recently issued mandamus relief from a post-judgment order appointing a master
in chancery in a case in which a separate, previously entered, post-judgment
turnover-and-receivership order had been suspended
before the appointment of the master in chancery.  See In re Holt,
01‑06‑00290‑CV, 2006 WL 1549968, at *2,
3 (Tex. App.CHouston [1 Dist.] June 8, 2006, orig.
proceeding) (memo. op.).  Further, the supreme court has held that a
pre-trial master-in-chancery order is reviewable by mandamus because A[t]o require the
parties to reserve their complaint for appeal would be to deny them any
effective relief from the trial court=s order.@  Simpson v. Canales, 806 S.W.2d
802, 812 (Tex.
1991).  Although the circumstances in Holt and Simpson
differ from those hereCSimpson, for the
order=s being issued pretrial, and Holt, for the
order=s not being coupled with a turnover-and-receivership
orderCthese decisions both
indicate that an order appointing a master in chancery, whenever it is entered,
is unappealable and that having to wait until it is
appealable leaves the complaining party with no adequate remedy.  See
Simpson, 806 S.W.2d at 812; In re Holt, 2006 WL 1549968, at *2, 3; see also Hardy v. Silva, No. 01-90-00135-CV,
1990 WL 98533, at *1 (Tex. App.CHouston
[1st Dist.] July 12, 1990, no writ) (not designated for publication) (holding,
in appeal of order granting temporary injunction, certifying class, and
appointing master in chancery, AWith respect to the
order appointing a master in chancery, we are aware of no authority authorizing
an interlocutory appeal from this order.@).  We see no
reason to reach a different conclusion simply because the master-in-chancery
order in the present case is imbedded within a turnover-and-receivership
order.  This is the conclusion that the Moyer court reached, and we
follow it here.  See Moyer, 183 S.W.3d at 58. 
The proper vehicle to challenge the master-in-chancery portion of the
complained-of order is by mandamus.[7] 
See Simpson, 806 S.W.2d at 812; In re Holt, 2006 WL 1549968, at *2, 3.

 

We thus hold that
we lack jurisdiction to consider issue five.

Although we lack
jurisdiction in this appeal to consider Wasim=s challenges to
the master-in-chancery portion of the order, we are mindful that the trial
court will, on remand, have occasion to reconsider its interlocutory
master-in-chancery ruling, in conjunction with its reconsideration of Shama=s application for turnover and
receivership, if Wasim so requests.  Indeed, as
the master-in-chancery portion of the order recites, the master=s duties and
powers were related to the turnover and receivership because the master was
given authority, among other things, to A[o]rder[]
production before him of evidence including documents upon all matters
pertaining to [Wasim=s] compliance with
this Order [for turnover and receivership] . . . .@  (Emphasis
added.)  Moreover, Athe Receiver@ was appointed
master in chancery, and we today reverse the order appointing that person as
receiver.  As our sister court of appeals has
stated when considering a turnover order that also appointed the same person as
receiver and master in chancery:

 

Roebuck insists in issue four that
the trial court erred by appointing the receiver as a master in chancery and by
setting the receiver=s bond in the
amount of $100.  . . . Upon remand, when considering a
new turnover order in accordance with this opinion, the trial court may again
consider whether the receiver should be appointed a
master in chancery.  We assume that in making such a determination the
trial court will consider the principles stated in Simpson v. Canales,
806 S.W.2d 802, 811B12 (Tex. 1991), which discusses the
limited occasions that might justify the appointment of such a master. 
Further, the trial court should consider whether the receiver acting as a
master would present a conflict of interest.  Also upon remand, while the
trial court may consider the appellant=s request that the bond for the receiver be increased, it
should do so in light of the principles stated in Childre,
700 S.W.2d at 289, which discusses the appropriateness of no bond or a nominal
bond for receivers in turnover orders. In view of the remand, we need not
decide issue four.

 

Roebuck, 74 S.W.3d at 165.

Conclusion

We reverse all
portions of the trial court=s order except that portion appointing a
master in chancery, which portion we have no jurisdiction to consider.  We
remand the cause.

 

Tim Taft

Justice

 

Panel consists of Justices Taft, Hanks, and Higley.














[1]        Turnover orders like this one are
final, appealable orders.  Burns v. Miller, Hiersche,
Martens & Hayward, P.C., 909 S.W.2d 505, 506 (Tex. 1995). 





[2]        However, Wasim does not request on appeal that the cause be abated for the trial court to file additional or amended
findings or conclusions.





[3]        Sufficiency challenges to findings
of fact supporting a turnover-and-receivership order are distinct from the
review of the order itself, for which the standard of review is abuse of
discretion, rather than evidentiary sufficiency.  See
Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223,
226 (Tex.
1991).





[4]        Wasim represented, without contradiction from Shama, in his brief in the divorce appeal that these
companies owned the medical equipment used in his private practice and the real
estate in which his practice was located.  See Sheikh v. Sheikh,
No. 01-05-00218-CV, 2007
WL 3227683, at *1 n.1 (Tex. App.CHouston
[1st Dist.] Nov. 1, 2007, no pet. h.)
(memo. op.) (so noting).





[5]        Although this Court has recently
issued its opinion affirming the divorce decree, mandate has not issued in that
cause, and the appeal thus remains pending.  See Sheikh v. Sheikh,
No. 01-05-00218-CV, 2007 WL 3227683 (Tex.
App.CHouston [1st Dist.] Nov. 1, 2007, no pet. h.) (memo. op.). 





[6]        See Burns, 909 S.W.2d at 506 (citing Schultz
v. Fifth Judicial Dist. Court of Appeals at Dallas, 810 S.W.2d 738, 740 (Tex. 1991), abrogated on other grounds by In re Sheshtawy, 154 S.W.3d 114 (Tex. 2004)).





[7]        At oral
argument, when explaining his view that we have jurisdiction to review the
master-in-chancery portion of the order, Wasim noted
that this Court has already denied two petitions for writ of mandamus that he
filed in this cause.  However, the focus of both of Wasim=s mandamus petitions was on the
turnover-and-receivership aspects of the complained-of orderCarguing that they
were void under Family Code section 9.007(c)Crather
than on the master-in-chancery provision of the same order.  Moreover, the
failure to grant mandamus relief Ais not an
adjudication of, nor even a comment on, the merits of a case in any respect,
including whether mandamus relief was available.@  In re AIU Ins. Co., 148 S.W.3d 109, 119 (Tex. 2004).